This is an appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Tiger Oil, Inc., Mark A. Pfeifer, Damon A. Pfefer, Harrison W. Smith, Jr., Ben W. Hale, Jr., Smith and Hale, and Stewart L. Dreifke.
Plaintiff-appellant, Rudolph Cera, owned a 77.73 acre parcel of land on the southeast side of Columbus. Appellant was interested in a tax deferred like-kind exchange under Section 1031, of the Internal Revenue Code ("IRC 1031") in order to avoid the capital gains tax that would occur when the property was sold due to appellant's low tax basis in the property. Appellant's desire to rezone the property for a higher use and the general economic progress of the area were factors contributing to the increase in value of the property.
On May 1, 1993, appellant and appellees entered into a contract in which appellees agreed to pay appellant $487,500 for an undivided one-half interest in the 77.73 acre property. The contract also contained a provision which stated:
 "Bayer [appellees] will cooperate [in the 1031 exchange) with Seller [appellant] by executing an Assignment of this Contract to Starker Services, Inc., which entity shall be used to acquire the Exchange Parcel."
IRC 1031 provides an exception to the general rule requiring current recognition of gain or loss realized upon the sale or exchange of property. IRC 1001(c).
A deferred exchange is defined as, an exchange in which, pursuant to an agreement, the taxpayer transfers property held for productive use in a trade or business or for investment (the "relinquished property") and subsequently receives property to be held either for productive use in trade or business or for investment (the "replacement property"). Treas. Reg. 1.103(k)-(a).
Under IRC 1031, no gain or loss is recognized if property held for productive use in a trade or business, or for investment, is exchanged solely for property of a like-kind to be held either for productive use in a trade or business, or for investment. The deferred gain represents only a potential tax, which may be avoided altogether if the exchange property passes through an estate at which point the property's basis is stepped up to the current market value as of the date of death. IRC 1041(a)(1).
Internal Revenue Services' regulations require that, in doing this type of transfer, either the exchange be simultaneous or deferred. If deferred, the replacement property must be identified within forty-five days and exchanged within one hundred eighty days of the relinquishment date or the replacement property would not be considered "like-kind." Treas. Reg. 1.1031(k)-1(b)(1) and 1(b)(2). Qualified intermediaries were created to assist in the completion of like-kind exchanges, as required by the exchange agreement, and could be used for either simultaneous or deferred transfers of the like-kind property. Treas. Reg. 1.1031(k)-1(g)(4), Treas. Reg. 1.103(b)-2(a).
This action arose upon a filing of a complaint in the Franklin County Court of Common Pleas by appellant against appellees as a result of the conflicting interpretation of the contract language for the sale of appellant's property.
Appellant brings two assignments of error as follows:
"FIRST ASSIGNMENT OF ERROR
 "THE FRANKLIN COURT OF COMMON PLEAS ERRED IN GRANTING SUMMARY JUDGMENT WHEN THE CONTRACT WAS AMBIGUOUS AND GENUINE ISSUE OF MATERIAL FACT EXIST AS TO THE CLAIMS FOR REFORMATION, RECISION AND LACK OF MUTUAL ASSENT.
"SECOND ASSIGNMENT OF ERROR
 THE FRANKLIN COUNTY COURT OF COMMON PLEAS ERRED WHEN IT DENIED PLAINTIFF-APPELLANT'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT."
It is clear that parole evidence is admissible, at least for some purposes, where a contract is ambiguous. Hildebrand v. Fogle (1851),20 Ohio 147, affirmed one hundred forty-three years later, in Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512.
The contract section in question, to which appellant would apply parole evidence to seek recision of the contract, reads as follows:
 "Buyer and Seller hereby agree to cause a trade and exchange of the Premises for a parcel selected by Seller (the Exchange Parcel'), as a `like-kind exchange' under Section 1031 of the Internal Revenue Code. The Buyer shall cooperate with the Seller at no cost or liability to Buyer, in accomplishing the Section 1031 Exchange. Buyer will cooperate with Seller by executing an Assignment of this Contract to Starker Services, inc., which entity shall be used to acquire the Exchange Parcel."
It is generally presumed that the intent of the parties to a contract resides in the language they choose to employ in the agreement. Shifrin v. Forest City Enterprises (1992), 64 Ohio St.3d 635. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id. Appellant argues that, as the contract failed to specify whether the transaction is part of a simultaneous or non-simultaneous exchange, parole evidence should be allowed to clarify that the evidence adduced under parole evidence would show that this contract should be rescinded or, in the alternative, reformed.
When the terms of the contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Id. If no ambiguity appears on the face of the instrument, parole evidence cannot be considered in an effort to demonstrate such an ambiguity. Id. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id. There was simply no evidence as to the type of IRC 1031 exchange which appellant wished to accomplish. In fact, the type of exchange is not even relevant to the language of this contract.
Appellant's claim or recision of the contract requires that he place appellees in status quo ante (meaning back in the position appellees occupied prior to signing the contract). Schulz v. Sullivan (1993),92 Ohio App.3d 205; Miller v. Bieghler (1931), 123 Ohio St. 227. In order to take advantage of a recision, appellant would be required first to tender the benefits he received as a condition precedent. He cannot retain the benefits and then come into court and claim that he is entitled to rescind. Schulz. While appellant has tendered offers of a promise to pay, he has not submitted the contract price back in substantially the same manner in which it was received, that being payment in cash. The facts would indicate here that an offer to pay over time is simply not sufficient to invoke recision. On the recision claim as a matter of law, there is no material fact of which relief can be ranted and appellant's argument must fail.
Appellant's reformation claim and lack of mutual assent claim, both hinge in part on the parole evidence rule. Nowhere in the contract or the deed was there language that made it ambiguous or in any way supported a claim that appellant would get his property back and return the money if he failed to complete his IRC 1031 exchange. Appellees cooperated fully in doing what was necessary on their part to permit appellant to complete the IRC 1031 exchange. At all times, appellant controlled the timing of the IRC 1031 transaction. The IRC 1031 exchange failed solely because appellant failed to complete the exchange in a timely fashion and, as a result, he incurred tax liability and had to pay capital gains tax on the property sold to appellees, instead of deferring the payment of the tax. Appellant had the obligation of meeting the IRC 1031 exchange requirements in order for the like-kind exchange to occur. Appellees paid $487,500 in cash and received, in consideration of that, a deed conveying an undivided one-half interest in the property. The contract was unambiguous and, therefore, parole evidence was not admissible. The buyer only had an obligation to cooperate in accomplishing an IRC 1031 exchange. Cooperation, by the previously recited tens of the contract, meant executing an assignment of the contract. There is no showing of any kind by the seller that there was a failure on the part of the buyer to comply with the explicit terms of Section (3). The buyer paid his money and fulfilled the obligation to cooperate. The buyer, therefore, complied with the terms of the contract. Appellant's reformation claim and lack of mutual assent claim must fail.
Summary judgment, pursuant to Civ.R. 56, is appropriate only where no genuine issues of material fact remain to be litigated; the saving party is entitled to judgment as a matter of law and, viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. The party seeking summary judgment bears the initial responsibility of identifying the elements of the opponent's case, which purportedly raise no genuine issues of material fact and upon which the moving party is entitled to judgment as a matter of law. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus. Once the moving party satisfies this initial responsibility, the party opposing the motion has an affirmative duty to produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus, citing Celotex v. Catrett (1986),477 U.S. 317. However, the party opposing motion for summary judgment need not produce evidence negating an issue for which the moving party has the burden of production at trial unless the moving party first produces evidence in support of that issue. See Willis Day Warehousing. There is simply no basis for the trial court to have denied the motion for summary judgment.
Appellant's first assignment of error is overruled.
In his second assignment of error, appellant complains that the trial court erred when it denied his third motion for leave to file an amended complaint after the case had already been continued at least twice and scheduled for trial. The third motion for leave to file an amended complaint was filed after the discovery cut-off date and less than one month before the scheduled trial date. The decision to grant or deny a motion to send is discretionary with the trial court. Siegel v. Birnbaum (Feb 20, 1997), Cuyahoga App. No. 69105, unreported. There was no abuse of the trial court's discretion.
Appellant's second assignment of error is overruled.
Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
STRAUSBAUGH, J., and TYACK, P.J., concur.
STRAUGBAUGH, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.