DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
General Casting Company appeals the judgment of the Lorain County Court of Common Pleas, which granted summary judgment to defendant/cross-plaintiff (Appellee herein) Larson Consolidated, Inc. and to plaintiff Columbia Gas of Ohio, Inc. We affirm.
 I.
In February 1995, General Casting[1] (General) negotiated the purchase of Larson Consolidated (Larson), which manufactured and sold "gray and ductile iron castings" in Grafton, Ohio. On February 15, 1995, the two companies signed an Asset Purchase Agreement, which provided that General would buy "substantially all" of Larson's assets. Section 3.1 of the agreement dealt with "Assumed Liabilities." It provided that General would assume the debts listed on Larson's Schedule 3(a)-1 list of accounts payable, prepared on February 13, 1995. The section also provided that General would pay certain "valid and bona fide trade accounts payable" which were incurred prior to February 15, 1995, but were not included on Schedule 3(a)-1. Included on the Schedule 3(a)-1 were two bills from Columbia Gas for gas service to Larson. These bills were for $1,583.86 and $11,472.32, for a total of $13,056.18.
On February 16, 1995 General took possession of Larson, and continued its operation. Gas service to the premises continued to be supplied by Columbia Gas. On March 3, General received a Columbia Gas bill in the amount of $15,533.63 for gas service rendered in January. On March 15, General received another bill for gas service rendered in February, of which $13,143.13 was for service rendered prior to February 15. On March 14, Frank Johnson, General's comptroller, sent Columbia Gas two letters, one for each of Larson's two Columbia accounts, notifying it that General had acquired Larson. As General did with all of Larson's creditors, General's letters offered to settle Larson's Columbia accounts on a reduced payment basis. The offer permitted Columbia to elect an immediate fifty percent payment of the outstanding bill, a sixty percent payment made over five years, or a ninety percent payment made over ten years.[2] Columbia declined to accept any of the options.
In August 1995, General Casting set up a new account with Columbia Gas. At that time, Johnson advised Columbia that General was not responsible for any of Larson's Columbia bills prior to February 15.
Columbia sued both Larson and General for payment of the entire sum of all outstanding bills for gas service rendered to Larson prior to February 15, for a total of $39,809.08. The defendants filed cross-claims against each other.[3] The total amount payable was never in dispute. The sole question to be resolved was which party was obliged to pay all or part of the bill, per the Asset Purchase Agreement between the defendants. The various parties filed for summary judgment and in January 1998, the trial court granted partial summary judgment to Columbia Gas. The court's judgment found that Columbia was entitled to $39,809.08. The court also found that General was responsible for payment of the two accounts payable, totaling $13,056.18, listed on the subject February 13, 1995 Schedule 3(a)-1. The court determined that further evidence was needed to determine which party was responsible for the balance of the Columbia bill. On July 23, 1998, the trial court granted summary judgment in favor of Larson on its cross-claim against General, finding that the Asset Purchase Agreement obliged General to pay the Columbia account. On August 12, the court then granted summary judgment in favor of Columbia on its claim against General, and ordered General to pay the remaining unpaid Columbia bill.
General filed the instant appeal, asserting one error.
 II. ASSIGNMENT OF ERROR
The Trial Court Erred in Its Interpretation of the Asset Purchase Agreement By Ignoring Fundamental Principles of Contract Law and Thereby Misconstruing Isolated Terms to the Exclusion and Contravention of the Contract as a Whole[.]
Both parties agree that the sole issue to be resolved is whether the trial court correctly interpreted the contract as to the allocation of the parties' respective obligations for the Columbia bills incurred prior to February 15, 1995.
The trial court concluded that the terms of the contract were "clear and unambiguous." Section 3.1(a) reads, in pertinent part:
Buyer shall assume the following specific liabilities of
Seller as of the Closing Date [February 15, 1995] * * *:
 (a) The accounts payable listed on the payables listing as of February 13, 1995 attached as Schedule 3(a)-1, * * * and the additional accounts payable for which invoices are received following the time at which Schedule 3(a)-1 was prepared which represent valid and bona fide trade accounts payable of Seller to unrelated third parties incurred prior to the Closing Date in the ordinary course of the Business and directly related to the production of castings, which additional amounts shall be added to the listing on Schedule 3(a)-1 and initialed by the parties.
The trial court found that Section 3.1(a) provided certain threshold conditions for a Larson account payable which, if met, would impose on General the liability to pay for that payable. Those conditions are, per the contract, "[1] valid and bona fide trade account payable of Seller [2] to unrelated third parties [3] incurred prior to the Closing Date [4] in the ordinary course of the Business and [5] directly related to the production of castings[.]" Because General did not dispute that the non-listed Columbia bills met all of these conditions, the court concluded that the contract obliged General to assume these debts.
If a contract is clear and unambiguous, its interpretation is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus, and 246. Only where a term of the contract cannot be determined from the document itself, will it be necessary to make a factual determination of the intent of the parties or the reasonableness of the term. Inland Refuse Transfer Co. v. Browning-Ferris Indus.of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, citing Hallet Davis Piano Co. v. Starr Piano Co. (1911), 85 Ohio St. 196. On appeal, questions of law are reviewed de novo. Long Beach Assn.,Inc. v. Jones (1998), 82 Ohio St.3d 574, 576, citing Ohio BellTel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147.
General argues that the trial court inappropriately focused on a single word in Section 3.1(a), which provided that accounts payable which met certain threshold requirements "shall" be added to the Schedule 3(a)-1 and initialed by the parties, for payment by General. General maintains that, when read as a whole, the contract provision dealing with General's assumption of Larson's liabilities was intended to be limited. Thus, the same provision for adding later accounts payable says that the items "shall be added to the listing on Schedule 3(a)-1 and initialed by the parties." According to General, the requirement that additional payables be listed and initialed was evidence of the parties' intent that General's approval was required for payment of an additional payable. This interpretation of the contract would provide that, for any or no reason, General could deny payment for any additional Larson payable even if it met the threshold requirements. According to General, the trial court's interpretation divests the listing/initialing requirement of "any real purpose[.]" We do not agree. Among other things, the listing and initialing of specific additional payable amounts would provide documentation of the total cost of the purchase, for accounting and tax purposes.
In support of its argument General offers as authority that "a writing * * * will be read as a whole and the intent of each part will be gathered from a consideration of the whole." FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353, 361. Applying General's authority to the instant situation, General cannot prevail. General insists that because it did not add the Columbia bills to the schedule and initial the amounts, it was not obliged to pay these amounts. However, such an interpretation of the contract would render superfluous the five descriptives limiting potential payables. Furthermore, to interpret the listing/initialing requirement as granting discretion to General clearly nullifies the contract provision that, "Buyer shall assume the following specific liabilities" including non-listed payables "which additional amounts shall be added to the listing on Schedule3(a)-1[.]" Since "a writing * * * will be read as a whole[,]"Foster Wheeler Enviresponse, Inc., 78 Ohio St.3d at 361, such an interpretation of the contract cannot be countenanced.
DeMeo and Johnson testified in their depositions that the intent of General was to limit the total liability which the company would assume for Larson's outstanding indebtedness. DeMeo testified that he had in mind a limit of $450,000 in "negative net worth." However, the contract contains no such mention of any dollar limit. Nor does it grant General unlimited discretion in determining whether to pay these bills. When Section 3.1(a) was read aloud, virtually verbatim, at his deposition, DeMeo testified, "Well, it's a reading of the description [of the contract provision] but the intention was * * * if [Larson employees] bring [a bill] to us, our intention, whatever they thought they owed, we might make a judgment call as to whether we would pay it or not pay it depending on whether it benefited [General]."
Whatever General's intention was, "a court is required to presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Perrine v.Perrine (Dec. 9, 1998), Summit App. No. 19024, unreported at 5-6, citing Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638. "`[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.'" (Alterations in the original.) Chicago WestPullman Corp. v. Quinn (Feb. 9, 1999), Lorain App No. 98CA007048, unreported, at 6, quoting Alexander, 53 Ohio St.2d at 246.
Clearly General could have drafted the contract to cap its assumption of non-listed payables incurred prior to February 15, 1995, to a certain dollar amount. Or, in the alternative, General could have drafted the contract to provide that General had unfettered discretion to pay or refuse to pay any non-listed payables. This it did not do.
"Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Shifrin, 64 Ohio St.3d at the syllabus. "There simply is no room in our jurisprudence for a doctrine that seeks to rescue the inattentive from the operation of well-accepted notions of contract interpretation." Id. at 640 (Wright, J., concurring).
The contract was clear and unambiguous. We find that, as a matter of law, the contract imposed on General an obligation to pay the Columbia bills in question. Thus, the trial court appropriately granted summary judgment in favor of both plaintiff Columbia Gas and defendant/cross-plaintiff Larson as against General. We overrule General's assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 WILLIAM R. BAIRD FOR THE COURT SLABY, J.
BATCHELDER, J.
CONCUR
[1] According to the deposition testimony of Frank DeMeo, in January 1996, General Casting created LFAC, Inc. (Larson Foundry Acquisition Company) for the specific purpose of acquiring Larson on behalf of General Casting. Frank DeMeo was the sole shareholder of LFAC, Inc. and the principal shareholder of General Casting. The purpose of LFAC was to limit liability in case environmental and other as yet unknown liabilities of Larson were discovered after the purchase of Larson. General later merged with LFAC. The record below includes references to both LFAC and General Casting.
[2] The form letter sent to each creditor offered an option of an immediate thirty percent payment of the amount payable in full satisfaction of the Larson debt. The copy of the letter sent to Columbia Gas had a handwritten note of "50%" and the standard "30%" crossed out for the immediate payment option. Johnson said the handwriting was probably his, but he could not remember changing the payoff percentage.
[3] General also filed a counterclaim against Columbia Gas for an overcharge on a later bill, but General later voluntarily dismissed that claim.