OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Shifrin et al., Appellants, v. Forest City Enterprises, Inc. et al., Appellees.

[Cite as Shifrin v. Forest City Ent., Inc. (1992), Ohio St.3d     .]

Contracts -- Extrinsic evidence considered in an effort to give effect to the parties' intentions, when.

Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions.

(No. 91-1344 -- Submitted June 3, 1992 -- Decided September 9, 1992.)

Appeal from the Court of Appeals for Cuyahoga County, No. 58068.

On June 1, 1965, plaintiff-appellant,1 Jack Shifrin, entered into an agreement with defendants-appellees, Forest City Enterprises, Inc. and F.C.E. Management Company (collectively, "Forest City"), creating a general partnership known as "Court Mall Properties Company" for the purposes of constructing, developing and managing the Eastland Shopping Mall in Flint, Michigan. Under the terms of the partnership agreement, Shifrin and Forest City each retained a fifty percent ownership interest in Court Mall Properties Company and shared equally in all profits and losses arising out of the operation of the mall.

In 1976, persistent disputes prompted the partners to enter into a management agreement providing specific guidelines for the joint management of the mall. Management disputes remained unresolved, however, and in 1984 the parties entered into an auction agreement providing for the purchase of the partnership by the partner who submitted the highest bid. The bidding took place on August 31, 1984 and Forest City prevailed with a bid of $8.7 million. As the prevailing party, Forest City had the right to choose a date for closing the transaction, no earlier than November 1, 1984 and no later than May 31, 1985. Forest City chose May 30, 1985.

In compliance with the auction agreement, Shifrin executed a document entitled "Assignment of Partnership Interest,"

transferring Shifrin's one-half interest in Court Mall Properties Company to Forest City. The parties also executed cognovit notes in the amount of $400,000 as liquidated damages if either party failed to complete the transaction on the prescribed date. The assignment was irrevocably deposited in escrow, to be delivered to Forest City at closing.

The partnership was to continue during the interim period between the auction and the closing; however, under the terms of the auction agreement, the prevailing party was required to open a new management account to handle the financial affairs of the partnership during the interim period. In September and December 1984, cash disbursements totaling approximately $99,000 were made to Shifrin from that management account.

Early in 1985, a disagreement arose over Shifrin's entitlement to interim payments from the operation of Eastland Mall. Relying on the language of the partnership agreement, Shifrin sought a distributive share of the net profits derived from the operation of the mall during the interim period; Forest City argued that under the management agreement Shifrin was entitled only to a distributive share of the net cash flow. Despite the disagreement, the closing took place as scheduled on May 30, 1985.

On October 3, 1985, Forest City determined that as of May 31, 1985, a cash balance of $152,712.67 was available for distribution to the general partners, and tendered one-half of that amount to Shifrin. Shifrin refused the sum, arguing that Forest City had erroneously calculated the amount due Shifrin.

The parties being unable to resolve the dispute over the method of calculating the payments due Shifrin during the interim period, Shifrin filed this action against Forest City on March 10, 1988, seeking an accounting and a distribution of Shifrin's share of the net profits accrued during the interim period. The Cuyahoga County Common Pleas Court rendered judgment in favor of Forest City, finding that Shifrin had released all claims against the partnership upon the transfer of Shifrin's partnership interest to Forest City at closing. Shifrin appealed to the Cuyahoga County Court of Appeals, which affirmed the decision of the trial court.

The case is before this court pursuant to an allowance of a motion to certify the record.

McDonald, Hopkins, Burke & Haber Co., L.P.A., Robert S. Stone and Kenneth J. Walsh, for appellants.
Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Thomas L. Dettelbach and Adrienne Lalak Deckman, for appellees.

Bryant, J. Shifrin's primary contention, contained in the first and second propositions of law, is that the court of appeals' determination that the releases extinguished Shifrin's claims is contrary to the intent of the parties. Specifically, Shifrin points to the testimony of Forest City's president, Albert Ratner, that Shifrin was entitled not only to the agreed purchase price of $8.7 million, but also to a distributive share from the operation of the mall during the interim period, the amount of which could not be ascertained until after closing. Shifrin further notes Forest City's post-closing tender to Shifrin of $76,356.34, based on Forest City's

determination of Shifrin's distributive share. Shifrin then argues that Ratner's testimony and the tendered money reveal the parties' intention to except from the releases claims relating to payment of Shifrin's distributive share during the interim period. For the reasons which follow, we find that under the unambiguous terms of the releases between the parties, Shifrin released all claims asserted herein, and we affirm the judgment of the court of appeals.

Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus; Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Kelly, supra, at 132, 31 OBR at 291, 509 N.E.2d at 413. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.

Accordingly, the threshold issue controlling our determination of the contractual intent of the parties herein is whether the releases in the auction agreement and assignment instrument are ambiguous. In Alexander, supra, paragraph two of the syllabus, we set forth a test for determining whether contract terms are ambiguous: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." See, also, Aultman Hosp., supra, 46 Ohio St.3d at 54, 544 N.E.2d at 923. If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. See Stony's Trucking Co. v. Pub. Util. Comm. (1972), 32 Ohio St.3d 139, 142, 61 O.O.2d 388, 389, 290 N.E.2d 565, 567.

Under paragraph 5(a) of the auction agreement, effective on consummation of the agreement,[2] the parties released each other from "all claims of every kind" with respect to the partnership from its inception, with the single exception of claims relating to a partnership utility account not relevant to the dispute herein.[3] Similarly, the language of the assignment instrument releases the partnership from "further claims against the partnership" without exception, effective upon Shifrin's transfer of the partnership interest to Forest City.[4]

Giving the terms of the releases their ordinary meaning, the releases indicate unambiguously the intent of the parties to release all of Shifrin's claims against the partnership at issue herein, including those arising during the interim period, effective upon transfer of Shifrin's partnership interest to Forest City. See Whitt v. Hutchison (1975), 43 Ohio St.2d 53, 60, 72 O.O.2d 30, 34, 330 N.E.2d 678, 683. While the evidence Shifrin cites shows that Forest City

intended under the contract to pay Shifrin's distributive share during the interim period, an intent not inconsistent with the language of the releases, the releases contain no exceptions preserving Shifrin's right to enforce such payments after the closing.

Shifrin attempts to circumvent the lack of a facial ambiguity in the releases by asserting that the parties would not have agreed that Forest City was obligated to pay Shifrin's distributive share during the interim period without providing Shifrin the means legally to enforce such payments, and that a "latent ambiguity" thus exists in the parties' agreements that justifies the use of parol evidence to show the intent of the parties, even if the terms of the releases are unambiguous.

While the record reveals that Forest City intended to contract for distributive payments during the interim period, the record does not similarly support Shifrin's contention that Forest City mistakenly, much less fraudulently, failed to include provisions in the agreements for enforcing that right. Shifrin having failed to demonstrate fraud, mutual mistake or the existence of an ambiguity on the face of the contract that would allow that court to vary the clear terms of the contract, parol evidence cannot be used to demonstrate a "latent ambiguity" in the contract between Shifrin and Forest City. Charles A. Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph two of the syllabus; Cassilly v. Cassilly (1897), 57 Ohio St. 582, 49 N.E. 795.

Accordingly, Shifrin's first and second propositions of law are overruled.

Shifrin's third proposition of law asserts that the trial court incorrectly applied the legal doctrines of anticipatory release and accord and satisfaction, and that those legal doctrines have no application herein. Shifrin did not raise this argument in the court of appeals and, thus, has waived it. State v. Williams (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus. Nevertheless, even if we were to agree that the trial court erred by applying these legal doctrines to the facts of this case, our disposition of appellant's first two propositions of law renders harmless any error in the trial court's treatment of those issues.

The judgment of the court of appeals is affirmed.

Judgment affirmed.

Sweeney, Acting C.J., Douglas, Wright, H. Brown and Resnick, JJ., concur.

Holmes, J., dissents.

Peggy Bryant, J., of the Tenth Appellate District, sitting for Moyer, C.J.

FOOTNOTES:

1 At all times relevant hereto, plaintiffs-appellants, Jack, David and Lisa Shifrin, collectively owned Jack Shifrin's interest in the partnership, and are referred to collectively as "Shifrin."

2 While the term "consummation" may be less than clear, thus raising a potential ambiguity regarding the date the release contained in the auction agreement became effective, the parties stipulated that the consummation date was the date of closing.

3 The release in the auction agreement states:

"5. (a) Effective on consummation of this agreement, each party releases and discharges the other from all claims of every kind with respect to the partnership from its inception and the Property, with the exception stated in (b) below [relating to utility charges during a time period not in dispute herein]. * * *"

4 The release in the assignment instrument provides that:

"* * * effective on and after the date of the transfer of such interest, the Shifrin Partners shall have no further claims against the Partnership or liability under any claims, legal or equitable, proceedings, suits, judgments, decrees, liabilities, obligations and/or taxes, which accrue on or after the effective date hereof * * *."

Wright, J., concurring. I join the majority's opinion in this matter, but I do so reluctantly because the result seems most unjust. I remain bewildered that Shifrin and Forest City entered into releases that were wholly at odds with their conduct predating the releases. As the majority aptly notes, however, the language of both the auction agreement and the assignment instrument clearly and unambiguously released the partnership from claims against it, without exception, upon Shifrin's transfer of his partnership interest to Forest City. Shifrin cannot now complain that the plain language of the releases is contrary to his intentions. There simply is no room in our jurisprudence for a doctrine that seeks to rescue the inattentive from the operation of well-accepted notions of contract interpretation.

Holmes, J., dissenting. This matter involves a dispute about money between two very sophisticated businessmen, Jack Shifrin and Albert Ratner, who, having formed a partnership a number of years previously for purposes of operating a shopping center, grew apart philosophically and decided upon a plan of buying out of the business through an auction agreement. Ratner, with his business entity, Forest City, was the successful bidder and Shifrin assigned his partnership interest to Forest City in escrow for delivery upon the consummation of the transaction on the eventual closing date, which was to be no later than May 31, 1985. The parties were to remain partners between the bidding date of August 31, 1984 and the closing date, which latter date as selected by Forest City was May 30, 1985. Further, the partners were to share in partnership profits during this interim period.

In the case at bar, the contractual intent of the parties regarding the entitlement to and distribution of partnership profits (or losses) for the interim period between the auction and the closing was clearly manifested in the parties' actual conduct, both before and after the closing date of the auction transaction. The trial testimony of both parties and their behavior in the interim period (from the August 31, 1984 bidding to the May 30, 1985 closing) clearly show that it was the intention of both parties that Shifrin receive his share of the partnership income for the interim period. In fact, Forest City paid and Shifrin accepted income for a portion of the interim period. And, in fact, Forest City unilaterally conducted and generated a post-closing "Corporate Internal Audit" dated October 3, 1985, which reflected additional income

of $152,712.67 available for distribution to the partners, $76,356.34 of which was offered to Shifrin along with a copy of the audit document. But Shifrin claimed that the computation was erroneous, refused to accept the distribution calculated by Forest City, and then perfected his claim in the lawsuit. Forest City opposed the computation claim, but never claimed in the courtroom that the release language of the parties' auction agreement barred Shifrin's claim.

The essence of the dispute between the parties which was tried in the court below centered on the method of calculation of the amount which Shifrin would receive, i.e., whether it would be calculated based on (a) accrued net profits or (b) cash flow, and not on whether Shifrin was entitled to claim a partnership distributive share (or was releasing his partnership share in consideration of his own sale of his interests). The lawsuit asked the court to determine the method-of-computation issue, which the parties willingly litigated. The court was not asked to determine whether Shifrin was barred by release from further payment of the full consideration for the sale of his partnership interests.

It is highly improbable that Shifrin, a sophisticated businessman, would execute this business-transfer instrument, believing that he was to remain a partner during the interim period of operation before the consummation of the transaction and the distribution of profits and the accounting therefor, and not intend that such partnership profits be divided properly and accordingly paid to him, or that he have appropriate recourse for their collection.

Judge Nahra, in his dissenting opinion in the court of appeals below, captured the import of the issues involved here, and applied the proper law to such issues. He stated as follows:

"The transaction we are concerned with involved a substantial interest in real estate, but its structure was quite simple. One partner was buying out the other partner. Until the sale closed, they were to remain partners and share in the profits or losses as partners. All parties testified to this understanding. The only argument was over how the profits or losses were to be computed. The defendants unequivocally admitted they owed the plaintiffs money. Also, it was undisputed that the amount owed could not be determined until sometime after the sale was consummated when all rents and overages had been collected and all expenses for that period had been paid. The majority's holding in effect is that the defendants released claims that did not even exist either when they executed the release or when they accepted the purchase price. Contracts are to be interpreted to carry out the intent of the parties. Yoder v. Electric Co. (1974), 39 Ohio App.2d 113, 316 N.E.2d 472, paragraph two of the syllabus; Sloan v. Standard Oil Co. (1964), 177 Ohio St. 149, 203 N.E.2d 237. There is no doubt that the intention of the parties was as stated above.  * * *"

I agree with Judge Nahra, and would accordingly reverse the judgment of the court of appeals and remand this matter to the trial court to determine the proper amount of the partnership profits due Shifrin.