OPINION
In its sole assignment of error, appellant, Fe-Po, Inc., challenges the summary judgment granted to appellee, ADR Associates, Ltd. ("ADR"), on Fe-Po's counterclaims. We affirm.
ADR is a surveying and engineering firm. Fe-Po is a real-estate developer. Fe-Po wished to build a subdivision in Harrison, Ohio. To accomplish this, it entered into a written contract with ADR in which ADR agreed, in part, to provide "all engineering and surveying services required for construction of the proposed subdivision." The contract, in a provision captioned general information, contained several items identified as information supplied by Fe-Po. Included in that list was the statement "[w]ater service is available from existing waterline running along side SR 310." The contract also required ADR to "provide all documentation and reports necessary to change the zoning for this site," to "attend all meetings/reviews necessary" as Fe-Po's representative to "make sure that the zoning change will be approved," and to "handle all problems and details which may arise during the Zoning, Design, or Construction periods of this development."
This lawsuit commenced when ADR sued Fe-Po for $11,581.36, allegedly owed for services rendered. Fe-Po answered and counterclaimed. In its counterclaim, Fe-Po alleged that ADR had breached the contract by failing to do the following: (1) timely notify Fe-Po of a decision that had declared a pertinent Harrison Township Project Unit Density regulations unconstitutional; and (2) attend necessary meetings and perform various contractual obligations. Fe-Po also claimed that ADR had been unjustly enriched and that Fe-Po had been monetarily damaged because ADR's failure to perform the contract had forced Fe-Po to cancel a contract with Moranda Homes, Inc., of Ohio. This claim was based on Fe-Po's allegation that the inability to obtain timely governmental approvals, as called for under Fe-Po's contract with Moranda Homes, Inc., of Ohio, had caused the contract to lapse.
Fe-Po desired to develop fifty-eight acres in Harrison Township by subdividing the property into one hundred thirty-three lots for residential housing. To do so, the property needed to be rezoned from its current usage to a Planned Unit Development ("PUD"). ADR commenced the rezoning process in December 1998, three months after it had entered the contract with Fe-Po. The process required that the Harrison Township Zoning Board approve a preliminary development plan and a final development plan, and that the Harrison Township Trustees approve a zoning change.
The Harrison Township Zoning Board approved the preliminary development plan on February 23, 1999, and the final development plan on June 22, 1999. Before Fe-Po had received final approval from the Harrison Township Zoning Board, the Licking County Planning Commission conditionally approved Fe-Po's subdivision, depending on, among other items, a certification from the city of Pataskala that it would make water available to the development. According to the Licking County Planning Commission, once all the conditions had been met, the construction could begin. On May 7, 1999, the city of Pataskala informed ADR that, in order to secure water for the subdivision, certain conditions would have to be met, including completion of improvements in the city's water treatment plant, which, contrary to previous time estimates, would not be completed until October or November.
In August, a hearing before the Harrison Township Trustees on the zoning change was continued. In September, the trustees notified citizens present at the zone-change hearing that Harrison Township PUD regulations had been declared unconstitutional. The trustees determined that they could not vote on Fe-Po's requested zoning change because the township no longer had PUD zoning.
Five months later, the trustees held a public meeting on the rezoning of Fe-Po's property, because they had been informed that the court's decision concerning the constitutionality of the PUD zoning regulations was inapplicable to cases in which a final decision was pending. Young-Deuck Ahn, Fe-Po's president, testified at the meeting that he had a letter from the city of Pataskala stating that the subdivision could use the city's water as soon as the new water plant was completed. David G. Krock, Vice-President of ADR, when asked whether the contract between the city of Pataskala and Licking County regarding water had been amended, stated, "I'm almost positive that was one of the things that we got taken care of last May was they said that the City could provide water to that area there." Ahn also testified that he had spoken to a representative of the city of Pataskala the week before, and that she had told him that the city would have new water treatment and a new water tower, and that Fe-Po could definitely have water. The trustees asked that Ahn supply them with a letter unconditionally guaranteeing water by a certain date.
The trustees further asked Ahn if the PUD zoning was a means to secure more density than that allowed by R-15 zoning. Ahn stated that he believed it was. When the trustees expressed concern about the lack of green space in the proposed subdivision, Ahn stated that the plan called for proper green space, and that, if the trustees required more, he would "knock off the project" and "just leave * * * farming."
Based on their concerns regarding the failure of Fe-Po to demonstrate the city of Pataskala's ability to unconditionally supply water on the date Fe-Po wished to start construction and the need for more green space, the trustees denied the zoning change. Fe-Po was invited to reapply after sixty days, when the trustees believed that the new PUD regulations would be effective. The record fails to demonstrate if the project was then abandoned. The most this court can determine is that there was no evidence that either party reapplied for a zoning change under the new PUD regulations.
ADR moved for summary judgment on Fe-Po's counterclaims. It supported its motion with a copy of the contract; the August 23, 1999 decision of the Licking County Court of Common Pleas declaring the Harrison Township PUD regulations unconstitutional; an October 6, 1999 status report from ADR to Fe-Po stating that it had been informed of the decision; a June 27, 1999 letter from the secretary of the Harrison Township Zoning Commission to the Harrison Township Trustees indicating acceptance of ADR's final plan for the subdivision as a PUD; and a transcript of the December 11, 1999 Harrison Township Trustees meeting.
ADR also provided identical affidavits from Douglas E. Mill, chief executive officer of ADR, and Krock, stating that: (1) ADR had provided all documentation and reports necessary to change the zoning; (2) ADR had attended all meetings/reviews necessary to ensure zoning approval; (3) the contract represented that water service was available, and, thus, it was not ADR's responsibility to secure water service; (4) the zoning change was denied because of the lack of water service and Fe-Po's density requirements; and (5) ADR contacted Fe-Po verbally within twenty days and in writing within thirty-six days of the announcement that the ordinance had been declared unconstitutional.
Fe-Po supported its opposing memorandum with the affidavit of Ahn, which stated that: (1) ADR had assured him that all preliminary work would be done so that the proposed project would get all necessary approvals and that zoning approval would be had by April 1999; (2) he received an August 24, 1999 letter from Pataskala's city administrator confirming that she had received no formal written request for water services despite Krock's assurance that he would "follow up"; (3) Ahn, instead, did the follow up and asked that the water request be addressed at the next city council meeting and that the Pataskala City Council approved the request; (4) Ahn met with Krock on October 5, 1999, where he first learned that the zoning change had not been obtained and a little more work was necessary, although Krock had told him in February 1999 that zoning had already been approved; (5) Krock knew that water approval was a condition of zoning approval, but failed to attend the necessary meetings and to get the necessary approval, requiring Ahn to get the approval; and (6) on September 13, 1999, the Harrison Township Trustees told Krock by letter that the PUD had been denied due to the constitutionality ruling on the ordinance, and that Ahn was neither informed of the letter nor given a copy. Ahn also provided a copy of an August 24, 1999 letter from the Pataskala city administrator, in which she stated that Krock had informed her on August 16, 1999, that he would be making a formal written request to the city council concerning water service, that Krock had not done so although he had been informed that city council approval was necessary, and that neither Ahn nor his representatives had petitioned for approval. He also provided a copy of the contract, the letter sent to Krock concerning the trial court's declaration that Harrison Township's PUD regulations were unconstitutional, and a real-estate contract between Fe-Po and Maronda Homes, Inc., of Ohio for the purchase of the lots as documentation in support of his alleged damages.
Summary judgment is properly granted when "construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party."[1] The moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case."[2] If that burden has been met, the nonmoving party then has the burden to come forward with specific facts showing a genuine issue of material fact.[3] We review a grant of summary judgment de novo.[4]
In this case, the contract clearly stated that Fe-Po had informed ADR at the time the contract was entered that water service was available from an existing waterline. Other provisions indicated that ADR would submit construction plans with all necessary details, including waterline profiles, to various governmental bodies and would "finalize all construction details and revise plans per comments by the Planning Commission." The contract also stated, "ADR will be your representative and handle all problems and details which may arise during the Zoning, Design, or Construction periods of this development." Unlike a provision that called for ADR to communicate with the Ohio Department of Transportation to gain approval for an access permit, there was no provision concerning its need to communicate about water sources.
This court has concluded that "[t]he interpretation of clear, unambiguous contract terms is a question of law and generally courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement.
[Citation deleted.] If the language in a contract is clear and unambiguous, there is no issue of fact to be determined and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. [Citation deleted.]"[5] It is "[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning [that] extrinsic evidence be considered in an effort to give effect to the parties' intentions."[6]
The issue here is whether ADR breached its contract by failing to obtain a water source for the proposed development. Fe-Po argues that the statement that water service was available was merely a general statement by Ahn about his understanding of the nearest water service. We conclude that the language of the contract was unambiguous as a matter of law. Fe-Po stated that it had a water source. There was no contractual agreement to initially obtain a water source.
The evidence demonstrates that there was no certified water source, and that continuation and completion of the development required an unconditional promise that Pataskala would provide water. The evidence further demonstrates that Ahn involved himself in that process, as did Krock. Further, it is undisputed that the zoning change was denied, in part, because there was no guarantee of water service. The evidence also demonstrates that Ahn, and not ADR, determined that the density requirements would not change.
We conclude that Fe-Po failed to demonstrate that there was a genuine issue of material fact as to whether ADR had breached its contract by making misrepresentations and by failing to attend meetings and provide reports.
Our conclusion that there was no factual issue as to whether ADR had breached its contract by failing to resolve the water-source issue or the density issue negates Fe-Po's claim that it was damaged because its contract with Maronda Homes, Inc., of Ohio did not come to fruition due to ADR's breach. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.
PAINTER, J., of the First Appellate District, sitting by assignment in the Tenth Appellate District.
[1] See Lenk v. Nationwide Mut. Ins. Co. (Feb. 19, 2002), Franklin App. No. 01AP-824, unreported, citing Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, 204.
[2] See Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264,273.
[3] See Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,111, 570 N.E.2d 1095, 1099.
[4] See Lenk v. Nationwide Mut. Ins. Co., citing Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212.
[5] See McDonald v. Miller (Mar. 29, 2001), Franklin App. No. 00AP-994, unreported.
[6] See id., quoting Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501.