JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Alliant Food Services, Inc. (Alliant) appeals from the decision of the Cuyahoga County Court of Common Pleas granting Appellee Lisa Powers' (Powers) motion for summary judgment. Finding no error in the proceedings below, we affirm.
 {¶ 2} The facts of this case are as follows.
 {¶ 3} Alliant supplies restaurants with food products. In 1998, Powers and her partner Yoel Yoelzadeh (Yoelzadeh) formed YLS, Inc. (YLS) to open a restaurant. In late 1998, they began discussions with Alliant about providing food products for their restaurant that was set to open in March 1999.
 {¶ 4} Alliant supplies food products to its customers either on credit or by payment upon delivery. In January 1999, Yoelzadeh signed a Confidential Account Application and Agreement with Alliant on behalf of YLS to begin receiving delivery of food products from Alliant that would be paid upon delivery. That agreement was received by Alliant. Alliant then began delivering food products to Powers' restaurant.
 {¶ 5} Powers and Yoelzadeh later decided they wanted their account status changed to receive shipments on credit. Alliant required customers who wanted to receive shipments on credit to sign a personal guaranty. Although still wanting the account status change, Powers and Yoelzadeh initially refused to sign the personal guaranty. Alliant continued to deliver food and supplies to YLS's restaurant and receive payment upon delivery.
 {¶ 6} Between January 1999 and March 1999, Alliant representative Kim Mihalko (Mihalko), Powers and Yoelzadeh had several in-person meetings and phone conversations about YLS's desire to have its account status changed and Alliant's insistence on the partners' signing a personal guaranty. As YLS prepared to open the restaurant in March 1999, Powers called Mihalko. Powers and Yoelzadeh agreed to sign the personal guaranty making them personally liable for the debts owed by YLS to Alliant. When Mihalko arrived at the restaurant, Powers and Yoelzadeh initiated discussions about limiting the personal guaranty to one year. Mihalko informed Powers she was not authorized to agree to any modification of the guaranty's duration. Powers handwrote and initialed a phrase underneath the signature line on the personal guaranty that read: "This guaranty is null and void after 1 year from this date." Both Powers and Yoelzadeh initialed that handwritten term. No representative of Alliant signed or initialed this modification.
Mihalko submitted the personal guaranty including the handwritten one-year limitation to Alliant's main office. Alliant then changed YLS's account status and began delivering food products to the restaurant on credit. The restaurant eventually closed sometime after March 2000. At closing, Alliant was owed $49,000 by YLS for food deliveries to the restaurant.
 {¶ 7} Alliant filed a complaint against YLS, Powers, and her partner Yoelzadeh. The complaint included an exhibit A that was Alliant's account status statement for YLS's restaurant. This document was also attached as an exhibit to Alliant's motion for summary judgment against YLS. The judge granted summary judgment against YLS for an amount based upon that account status statement. Yoelzadeh filed for bankruptcy, and the action against him was stayed.
 {¶ 8} Alliant also filed a motion for summary judgment against Powers. It argued that Powers had signed the personal guaranty promising to repay all debt of YLS to Alliant without limitation. Powers filed a cross-motion for summary judgment arguing the personal guaranty was limited to one year based upon Alliant's acceptance of the one-year limitation inserted by Powers. Powers also argued that as of that expiration date, she only had $2,500 in debt according to Alliant's own account status statement.
 {¶ 9} The judge granted Powers' motion, in part. The judge found that Alliant's conduct of changing YLS's account status manifested acceptance of the personal guaranty including Powers' one-year limitation. The judge ruled there remained a genuine issue of fact regarding the amount due Alliant during the one-year term of the guaranty.
 {¶ 10} As the parties prepared for trial, Alliant informed Powers that its previous analysis of their account status statement, attached as exhibit A to the complaint, was incorrect. Alliant now claimed that exhibit A showed that the approximately $49,000 owed by YLS was for debts incurred within the one-year period of the guaranty authorized by Powers. This prompted Powers to move in limine to exclude any testimony or documents supporting this new analysis. In response, the judge modified her summary judgment order prior to trial limiting the balance due by Powers to no more than $2,500. The total amount of all items from Alliant's account status statement that were listed alongside dates within the one-year period of the guaranty is equal to $2,500.
 {¶ 11} The judge eventually inserted the "no just cause for delay" language into a modified version of this summary judgment order enabling Alliant to appeal both the issue of the one-year limit on the personal guaranty and the establishment of the $2,500 limit on liability. Alliant advances three assignments of error for review that we address in order.
 {¶ 12} "I. The trial court erred in finding no genuine issue of material fact existed concerning the plaintiff's acceptance of the limiting language placed on the personal guaranty by defendant after the signatures.
 {¶ 13} "A. The trial court considered unsworn and partial excerpts of the deposition testimony of the representative of Alliant in determining its ruling on Defendant-Appellant's Motion for Summary Judgment.
 {¶ 14} "B. Genuine issues of fact remain as a matter of law, considering the conflicting testimony and evidence submitted by the parties. This conflict should have been resolved by the trial court in favor of the non-movant, Alliant."
 {¶ 15} It is undisputed that only partial deposition transcripts were filed by Powers as part of her motion for summary judgment. Likewise, it is undisputed that Alliant failed to object to the submission of the partial transcript as part of its opposition to Powers' motion. Further, Alliant cited portions of the partial transcript in responding to Powers' motion.
 {¶ 16} This court has held "because no objection was raised, it cannot be held that the trial court erred by considering the documents attached to [a] motion for summary judgment when ruling on the motion."Brown v. Ohio Casualty Insurance Co. (1978), 63 Ohio App.2d 87.
 {¶ 17} Item IA of this assignment of error is overruled.
 {¶ 18} Item I and IB of this assignment of error both involve the propriety of the judge's granting summary judgment for Powers.
 {¶ 19} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1.
 {¶ 20} The Ohio Supreme Court clarified the summary judgment standard by ruling that the moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim. Dresherv. Burt (1996), 75 Ohio St.3d 280. In addition, the nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. The nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 21} The core of sections I and IB of this assignment of error is whether Alliant accepted Powers' handwritten term limiting the personal guaranty to one year and whether the determination of Alliant's acceptance is an issue of fact or a matter of law.
 {¶ 22} The guaranty signed by Powers contains the following typewritten language: "For valuable consideration, the undersigned * * * hereby personally guarantees, absolutely, unconditionally and irrevocably the payment upon demand of all liabilities, indebtedness and obligations * * * whether now or hereafter existing of YLS, Inc. * * * to Alliant Foodservice, Inc. * * * This Guaranty shall continue in full force and effect until all of the Debtor's liabilities, Indebtedness and obligations to [Alliant] have been fully paid, performed and discharged and it is revoked in writing and such revocation is received by [Alliant]."
 {¶ 23} Alliant reads this language as creating a guaranty of unlimited duration provided "indebtedness and obligations" have not been fully paid. Powers counters with her reading of her handwritten term as overriding the typewritten terms quoted above and creating a guaranty of limited duration, i.e., "This guaranty is null and void after 1 year from this date." Powers argues Alliant accepted this term by virtue of its conduct. Alliant argues that this dispute over its acceptance creates a genuine issue of material fact that was not properly resolved by summary judgment.
 {¶ 24} The construction of a written contract is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241. "When the terms of the contract are unambiguous and clear on their face, the court does not need to go beyond the plain language of the contract to determine the rights and obligations of the parties and the court must give effect to the contract's express terms."DiGioia Bros. Excavating, Inc. v. Cleveland Dept. of Pub. Util., Div. ofWater (1999), 135 Ohio App.3d 436.
 {¶ 25} To have a valid and enforceable contract, there must be an offer by one party and an acceptance of the offer by another. Camastrov. Motel 6 Operating, L.P., (Apr. 27, 2001) 2001 Trumbull App. No. 2000-T-0053. In turn, "for there to be a proper offer and acceptance, parties to a negotiation must have a meeting of the minds." Gall v.Trumbull Mem. Hosp., (July 7, 2000) 2000 Trumbull App. No. 99-T-0102. Stated differently, when entering into a contract, "parties must have a distinct and common intention which is communicated by each party to the other." McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First UnionMgt., Inc. (1993), 87 Ohio App.3d 613. Therefore, "if the minds of the parties have not met, no contract is formed." Id.
 {¶ 26} A contract may either be express or implied-in-fact.Columbus, Hocking Valley Toledo Ry. Co. v. Gaffney (1901),65 Ohio St. 104. The distinction between express and implied-in-fact contracts is in the form of proof generally used to establish such contracts. Id. In express contracts, the parties' express written and oral statements manifest the offer and acceptance and the parties' meeting of the minds. Stepp v. Freeman (1997), 119 Ohio App.3d 68. In implied-in-fact contracts, the parties' meeting of the minds is shown by the surrounding circumstances including the parties' conduct and declarations, making it reasonably inferable that the parties intended to create binding and certain obligations. Id.
 {¶ 27} Alliant required Powers to sign and submit a personal guaranty before changing YLS's account status. Powers signed the personal guaranty with the added one-year limitation and submitted it to Alliant. Alliant received that signed personal guaranty with the one-year limitation and placed it in Powers' file. Alliant was able to produce this document from its files as part of discovery in this case. After receiving and filing this personal guaranty document, Alliant changed YLS's account status and began delivering food supplies to Powers' restaurant on credit. Therefore, the judge determined that Alliant's conduct manifested acceptance of the personal guaranty and the one-year limitation.
 {¶ 28} Alliant argues there remains disputed issues of material fact making summary judgment improper. There is no dispute that Alliant drafted this agreement, Powers signed it, Powers added a one-year limitation to the agreement, Alliant received and filed the agreement, and Alliant changed Powers' account status following receipt of the agreement including the one-year limitation.
 {¶ 29} Whether Alliant's conduct manifested acceptance of Powers' handwritten term is the only disputed issue. The judge resolved that issue as part of Powers' summary judgment motion. We agree with the judge's determination that, as a matter of law, Alliant's conduct manifested acceptance of the personal guaranty with the one-year limitation.
 {¶ 30} For the reasons outlined above, we find that Alliant accepted and filed the contract with the handwritten terms without demanding any additional action by Powers. This conduct, coupled with the change in account status, indicated Alliant's express acceptance of the terms limiting Powers' liability to one year. The term limiting liability to one year was a clear, expressed term of the contract accepted by virtue of Alliant's conduct. Further, even though Alliant did not expressly accept the handwritten limitation by initialing or signing the limitation, Alliant's subsequent conduct indicated acceptance of the modification of the original typewritten terms.
 {¶ 31} This assignment of error is overruled.
 {¶ 32} "II. The trial court erred as a matter of law by failing to interpret the terms of the personal guaranty as a whole, where limiting language added to the personal guaranty should not have been read to change any other terms of the pre-existing agreement between the parties."
 {¶ 33} Alliant argues that even if the handwritten term was found to be accepted by Alliant, it can be read as not conflicting, but supplementing the typewritten terms that appear conflicting. Powers argues, and the judge agreed, the handwritten term does not supplement, but supplants the typewritten terms.
 {¶ 34} Alliant's argument is that Powers inserted the handwritten term to merely indicate a desire for the guaranty to be cancelled after one year, provided all indebtedness that was guaranteed by Powers had been satisfied.
 {¶ 35} It is generally presumed that the intent of the parties to a contract resides in the language they choose to employ in the agreement. Shifrin v. Forest City Enterprises (1992), 64 Ohio St.3d 635. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id. Appellant argues that Powers' insertion of the handwritten term creates an ambiguity that parol evidence should be allowed to clarify. We disagree.
 {¶ 36} When the terms of a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language used by the parties. Id. If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. Id.
 {¶ 37} We find that the agreement here was not ambiguous. However, even were we to find that the agreement was ambiguous, the parol evidence available to the judge eliminated that ambiguity in favor of Powers' argument that the personal guaranty was limited in duration to one year.
 {¶ 38} It is clear from the deposition testimony of both Powers and Mihalko that this was not Powers' intention.
 {¶ 39} Powers testified she inserted the handwritten term with the understanding she would not be liable for any indebtedness at the end of the one-year term of the personal guaranty. Powers submitted an affidavit as part of her opposition to Alliant's summary judgment motion that contained the following statement:
 {¶ 40} "The proposal was made that we would settle this issue by giving Alliant a personal guaranty, but limiting its effect to one year, so that after one year, when Alliant had had the chance to get some credit history experience with YLS, the guaranty would be dropped and Alliant would thereafter look only to YLS for payment of its account."
 {¶ 41} Alliant continued to deliver food supplies to Powers' restaurant beyond the one-year termination date of the guaranty, i.e., beyond March 8, 2000. In granting summary judgment for Powers, the judge found that Powers' personal guaranty expired on March 8, 2000. Powers was, therefore, liable only for food deliveries to YLS's restaurant which took place prior to that date. There is no factual dispute regarding Powers' intention to limit the personal guaranty to one year. As a matter of law, Alliant's conduct manifested acceptance of that one-year limit. Alliant's acceptance of the one-year term logically prevents any interpretation of any other term in the agreement such that it would extend Powers' obligation beyond March 8, 2000. Alliant asks us to interpret this agreement "as a whole" to extend Powers' obligation beyond March 8, 2000, and we decline to do so.
 {¶ 42} This assignment of error is overruled.
 {¶ 43} "III. The trial court erred in its finding that no genuine issue of fact existed as to defendant's liability on the personal guaranty being no more than $2,500.00 as of March 8, 2000, where no evidence was presented to the court on which the finding could be based."
 {¶ 44} Alliant included an account status for the YLS account as an exhibit to the complaint and to their motion for summary judgment against YLS. That account status contains 12 columns of information. The fourth column, entitled "Date," contains the dates of various transactions on the YLS account that are described in the second column by the abbreviations "DSCRPNCY," "MKT FUND," "ADJSTMNT," "CL," "CR MEMO," "INVOICE" AND "SERVICE CHARGE." In the "Date" column, there are only three dates listed that are within the one-year period of the agreement. All three items alongside those dates are labeled "ADJSTMNT" in column two. Those three items are equal to exactly $2,500.
 {¶ 45} In accordance with that plain reading of Alliant's own account status statement, the judge found that Powers' account balance with Alliant as of March 2000 was no more than $2,500 and capped her liability at that amount. Because of the use and interpretations of the abbreviations and Powers' contention that she had paid all debts to Alliant that were due and owing as of March 8, 2000, the court set this matter for trial to resolve that factual dispute. The $2,500 ceiling on Powers' liability merely acts to give effect to Alliant's own account status statement that on its face contains only three items that could possibly fall within the one-year limit of the personal guaranty.
 {¶ 46} The judge determined that no genuine issue of fact remained as to the maximum amount of Powers' liability. The judge relied on Alliant's account status statement in calculating Powers' maximum liability. In viewing the evidence most strongly in favor of Alliant, the judge's conclusion was still adverse to it. In so doing, the judge did not err in ruling that Powers' liability is no more than $2,500.
 {¶ 47} This assignment of error is overruled.
Judgment affirmed.
PATRICIA ANN BLACKMON, P.J., AND ANNE L. KILBANE, J., CONCUR.