[Cite as *Barnett v. Sanders*, 2025-Ohio-5033.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

LEE BARNETT JR., GUARDIAN FOR MARGARET HOUZE,

Plaintiff-Appellee,

v.

JOHN D. SANDERS et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No.  25 CO 0008**

---

Civil Appeal from the
Municipal Court of Columbiana County, Ohio
Case No. 2025 CVG 0391

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Andrew R. Zellers*, Buckingham Doolittle & Burroughs, LLC, for Plaintiff-Appellee
and

*Atty. Jeffrey Jakmides*, *Atty. Julie A. Jakmides*, for  Defendants-Appellants.

Dated:  November 5, 2025

**Robb, P.J.**

**{¶1}** Defendants-Appellants John D. Sanders and Mary Sanders (the tenants) appeal the decision of the Columbiana County Municipal Court ordering them to vacate a dwelling as requested by Plaintiff-Appellee Lee Barnett Jr., Guardian for Margaret Houze (the landlord). Their two-year lease contained a clause entitled "NOTICES" stating the tenant may vacate upon a 30-day written notice but "Should the landlord decide to have tenants vacated, a 90-day written notice is required." The tenants contend the trial court erred in concluding this clause was equivalent to a termination clause that permitted the landlord to terminate the lease early and at-will upon proper notice. The landlord responds the plain language of the Notices clause allowed the procedure utilized here. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶2}** The parties entered into a lease for a dwelling at a Minerva address. The terms of the lease were all set forth on the first page of the two-page lease. The opening clause provides, "**TERM**: The term shall be a 2-year agreement commencing on June 3, 2024, until June 3, 2026, at $1500.00 per month payable on the 4th of each month in full." The next clause lists a late fee if rent was not paid by the fifth day after the due date. Other clauses pertain to utilities, appliances, repairs and damages, security deposit, and liability insurance. The penultimate clause, which is in dispute here, reads as follows:

> **NOTICES**: Should the tenant decide to vacate the premises, a 30 day written notice to the landlord is required. Should the landlord decide to have the tenants vacated, a 90 day written notice is required.

(Ex. A). The final clause on the first page contains the tenants' acknowledgement to reading, understanding, and agreeing to all parts of the document and to receiving a copy of it. The second page summarizes the lease in the header and contains the notarized signatures of the tenants and a female who signed for the landlord as "POA" (power of attorney).

**{¶3}** On October 1, 2024, the Stark County Probate Court declared the landlord incompetent, voided all powers of attorney, and issued letters of guardianship. (Ex. F).

Case No. 25 CO 0008

**{¶4}** On October 18, 2024, the landlord through her guardian signed a "90 Day Notice to Terminate Tenancy" citing to the terms of the attached lease and asking the tenants to vacate the property. The notice said compliance by vacating would prevent an eviction action and provided the contact information for the landlord's attorney. (Ex. B). An affidavit from the individual who served the notice attested the notice was posted at the premises on October 28, 2024. (Ex. C).

**{¶5}** After the tenants did not vacate within 90 days, the landlord's guardian signed a 3-day notice on February 3, 2025. Citing to the prior 90-day notice, this final notice required the tenants to vacate within 3 days to avoid an eviction action. (Ex. D); *see also* R.C. 1923.04(A). A signed return of service stated the 3-day notice was posted at the premises on February 4, 2025. (Ex. E). [1]

**{¶6}** On February 14, 2025, the landlord through her guardian filed a forcible entry and detainer complaint against the tenants. The complaint alleged the term of the lease expired after the tenants failed to vacate as instructed in the posted 90-day notice permitted by the terms of the attached lease and then failed to vacate after the subsequent 3-day notice was issued and posted. Exhibits A through E were attached to the complaint.

**{¶7}** The parties appeared with their attorneys for the March 4, 2025 trial to the court. The landlord's guardian testified and arguments were presented. The guardian explained he was the landlord's son. (Tr. 6). He identified his letters of guardianship and the other exhibits. Because he provided the tenants 90 days to vacate under the Notices clause of the lease in October, he rejected their February rent payment because it was after the notice's termination date. (Tr. 8-14). After the guardian's testimony, the court heard arguments and took the matter under advisement.

**{¶8}** On March 5, 2025, the court issued a judgment ordering the tenants to vacate the property on or before April 5, 2025. The court concluded the lease contained a termination clause and found it was "legally binding under Ohio law, not

---

[1] In addition to citing the prior 90-day notice to vacate as a reason, the 3-day notice also mentioned nonpayment of rent. However, there was evidence of missing or untimely rent *before* the 3-day eviction notice was posted at the premises on February 4, 2025 at 2:29 p.m. At trial, it was noted the January rent was accepted (because the 90 days had not yet expired). The date of this rent payment was not mentioned (and the next rent would not have been late until the day after the notice was served.)

unconscionable, and otherwise enforceable." The court also found statutory notice requirements were not violated, citing, e.g., R.C. 1923.04.[2]

{¶9}  The tenants filed a timely notice of appeal. This court granted a stay pending appeal with orders for the tenants to pay the February through April rent within seven days plus future rent to the clerk of court.

ASSIGNMENTS OF ERROR

{¶10}  The tenants set forth the following two assignments of error:

"The trial court committed plain error in finding that a 'termination clause' existed in the lease agreement for the subject property which Plaintiff-Appellee's [sic] attached to their Complaint as Exhibit A."

"The trial court's decision granting Plaintiff-Appellee judgment on the first cause of their Complaint for Forcible Entry and Detainer is against the manifest weight of the evidence and is contrary to the plain language of O.R.C. 5321.03 which only permits an action for possession by a landlord under specific circumstances, none of which were presented to the Court as applicable and a basis for the action."

{¶11}  The tenant's first assignment of error utilizes the stringent plain error test, quoting: "In applying the doctrine of plain error to a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Hanak v. Bush*, 2017-Ohio-4282, ¶ 7 (7th Dist.) (involving a failure to file objections). The tenants then argue the trial court committed plain error by construing the Notices clause as a termination clause, arguing this is "one of those extremely rare cases" involving a manifest miscarriage of justice contemplated by the plain error doctrine.

{¶12}  On this cited standard of review, we point out a party must resort to plain error on appeal where a matter would otherwise be considered waived or forfeited by a party. The legal issue discussed at trial was whether the Notices clause allowed

---

[2] The judgment also said there was no violation of R.C. 5321.07, which in part provides for a 30-day notice for terminating a month-to-month tenancy. The court's cite to this statute appears to be a response to a portion of the tenants' alternative argument at trial that a 30-day notice should have been provided after the 90-day notice (an argument that is not repeated on appeal).

termination prior to the end of the term, and the tenants presented arguments against this construction of the Notices clause.

**{¶13}** Accordingly, there is no need for the tenants to resort to the plain error doctrine in presenting their appellate argument on whether the Notices clause allowed termination of the lease prior to the end of the 2-year term.  In fact, their second assignment of error contains the legal argument that the trial court's decision was contrary to the plain language of the lease.

**{¶14}** The second assignment of error simultaneously argues the court's decision was contrary to the manifest weight of the evidence.  Although, there is no argument that the weight of the evidence argument is presented in the event the clause is considered ambiguous.  (We note the factual background testimony presented to establish the notices were issued and the tenants remained in the house thereafter is not challenged.)

**{¶15}** The Supreme Court has explained, "whether a contract is ambiguous is a question of law, [while] the resolution of an ambiguous term in a contract is a question of fact." *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12, 18-19.  As repeatedly emphasized by the Supreme Court, "If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9.  The Court instructs us to apply the plain and unambiguous language found within "the four corners" of the writing.  *LRC Realty, Inc. v. B.E.B. Props.*, 2020-Ohio-3196, ¶ 17.  Contractual words or phrases should not be read in isolation.  *Dominish v. Nationwide Ins. Co.*, 2011-Ohio-4102, ¶ 8.

**{¶16}** "When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."  *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).  Therefore, extrinsic evidence is not considered in determining the parties' alleged actual intent unless the language is unclear or ambiguous (or unless there is evidence a term has special meaning under certain circumstances).  *Id.* (where "no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity.").  Although there was no parol evidence presented by either party here, we note parol evidence is used to interpret ambiguity not to contradict words.  *Corso v. Miser*, 2020-Ohio-5293, ¶ 27-28 (7th Dist.).

{¶17} The secondary rule of contract construction construing language against the drafter is not applied unless the contract is ambiguous and the extrinsic evidence fails to clarify the parties' intent or the meaning of a term. *Id.* In other words, only unresolved ambiguities are construed against the drafter. *Monnett v. Monnett*, 46 Ohio St. 30, 34-35 (1888) (construe ambiguities against the drafter to avoid a finding of contract uncertainty after applying all other rules of contract construction).

{¶18} However, a writing is not ambiguous unless its terms are "susceptible to more than one reasonable interpretation." *Corder v. Ohio Edison Co.*, 2024-Ohio-5432, ¶ 14. "The mere fact that a contract's text might be subject to competing interpretations does not mean that the text is ambiguous" because if one of the competing interpretations of a term in a deed conflicts with the deed's purpose or structure or if it strains ordinary usage, then it cannot be considered reasonable. *Id.* Common words are given their ordinary meaning unless a manifest absurdity would result or the instrument clearly evidences some other meaning. *Shifrin* at 638.

{¶19} The tenants cite the grounds in R.C. 5321.03(A) for a landlord to bring an action under Chapter 1923 for possession against a tenant. They say there was no evidence presented of a default in paying rent under division (A)(1) and no evidence they were holding over their term under division (A)(4) because the Notices clause in the lease was not akin to a termination clause and did not allow the parties to cause vacation of the premises prior to the unexpired two-year term. Below, they argued the Notices clause dealt only with how to cause vacation of the premises at the end of the term when a month-to-month tenancy would begin.

{¶20} In response, the landlord focuses on (A)(4) but adds a brief alternative argument on (A)(1) as well. On the (A)(1) ground, the landlord claims the evidence showed the tenants have not paid rent since February. However, this argument is difficult to understand. The landlord's guardian testified the tenants paid their January rent but he returned their February rent due to the expiration of the 90-day letter. He did not indicate either payment was untimely. As the hearing took place on March 4, the March rent was not yet late (as it was due on that same day). As related to a landlord's action against a tenant due to the existence of a ground in division (A) of R.C. 5321.03, there was no evidence the tenant was in default of February rent since the rent was rejected

Case No. 25 CO 0008

by the landlord and failure to pay rent *subsequent to the hearing* necessarily cannot be a ground demonstrated at the hearing.

**{¶21}** On the (A)(4) ground, which was the ground discussed at trial, the landlord argues: the Notices clause allowed the landlord to terminate the lease, despite the two-year term, by providing a 90-day notice; the facts showed this notice was provided followed by a 3-day eviction notice for failure to vacate as requested in the 90-day notice; and the tenants were thus holding over the term under R.C. 5321.03(A)(4). In supporting the trial court's decision finding the lease contained a "termination clause," the landlord relies on the plain language of the Notices clause, urging it clearly allows either party to cause vacation of the premises (without limitation of when or why) by providing the agreed-upon notice to the other party. The landlord urges the failure of the clause to specifically use the word "termination" is not dispositive. The landlord alternatively claims if reasonable minds could differ, then the subsequent factual decision on the meaning of the Notices clause was best left to the trier of fact.

**{¶22}** It is pointed out the tenants do not argue there is some legal prohibition on a rental agreement containing a clause allowing a party to terminate the lease early without cause, and a pertinent statute provides: "A landlord and a tenant may include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321. of the Revised Code or any other rule of law." R.C. 5321.06.

**{¶23}** There is also no argument that a lease is necessarily ambiguous if it contains both a set term and a without cause early termination clause. On this point, we note the term lease serves in part to protect against rent increases during the term.

**{¶24}** Thus, there is no inherent conflict between a term lease and a provision within it allowing either party to cause early termination without cause. Again, the clause at issue in the 2-year term lease provides the following:

> **NOTICES**: Should the tenant decide to vacate the premises, a 30 day written notice to the landlord is required. Should the landlord decide to have the tenants vacated, a 90 day written notice is required.

(Ex. A).

**{¶25}** This is a broad clause. It does not contain language limiting its application to only decisions to cause vacation of the premises after the term in the lease has ended. The clause clearly encompasses the right of either party to terminate the lease earlier than the end of the term by providing the notice contained within the clause. In other words, it plainly applies whenever either party decides to cause the vacation of the premises.

**{¶26}** The use of the phrase "Should the landlord decide" (or "Should the tenant decide") is akin to saying "without cause" in this context. The phrase "decide to vacate the premises" or "decide to have the tenants vacated" is clearly speaking of a termination of the tenancy, regardless of the lack of specific words providing for the "termination" of the stated lease "term."

**{¶27}** A clause allowing a party to decide to cause the vacation of premises upon the provision of the listed notice is akin to a clause allowing a party to terminate the tenancy, whether the resulting notice would cause vacation of the premises within the original term or immediately at the end of the original term to avoid a subsequent default month-to-month tenancy. As the Notices clause contains no limiting language, it plainly and unambiguously covers all decisions to cause the vacation of premises subject to the lease.

**{¶28}** We find this is the only reasonable construction, and the tenant's constructions strains ordinary usage. *See Corder,* 2024-Ohio-5432, at ¶ 14. Because we conclude the lease contains plain language allowing the termination here, there is no need to weigh evidence on ambiguities or intent or employ secondary rules of construction. *See Shifrin*, 64 Ohio St.3d at 638; *Corso*, 2020-Ohio-5293, at ¶ 27-28 (7th Dist.). The tenants' assignments of error are overruled.

**{¶29}** For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

Hanni, J., concurs.


Case No. 25 CO 0008

———————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Municipal Court of Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**