OPINION
{¶ 1} This matter is before this court upon the appeal of defendant-appellant, Judith A. DeVillers ("DeVillers") from the judgment of the Franklin County Court of Common Pleas, which granted a directed verdict against DeVillers and in favor of plaintiff-appellee, Holt Company of Ohio ("Holt") in the amount of $265,264.09, plus interest at the rate of ten percent per annum. Defendant asserts the following three assignments of error on appeal:
1. The Trial Court Erred In Granting Plaintiff-appellee's Motion For A Directed Verdict.
2. The Trial Court Erred In Adopting And Signing Plaintiff-Appellee's Proposed Judgment Entry With Exhibits Attached.
3. The Trial Court Erred In Granting Prejudgment Interest To Plaintiff-Appellee.
 {¶ 2} In 1981, DeVillers and Jack Frost ("Frost") started the Exco Company ("Exco"). Exco was a site-development company, which performed excavation work on commercial construction sites and installed underground utilities. At the time Exco was formed, DeVillers owned 60 percent of the stock. Frost ran the company and was responsible for the day-to-day operations, and DeVillers was made a member of the board of directors. DeVillers' salary was nominal at first, and eventually increased to approximately $65,000 in the year 2000.
 {¶ 3} In 1988, Frost died. The board of directors of Exco hired Bob Roach ("Roach") as president, and DeVillers became the chief executive officer ("CEO"). As the CEO, DeVillers signed the payroll, planned advertising, and dealt with estimators. Roach became responsible for the day-to-day operations of the company.
 {¶ 4} Holt is an Ohio company which leases and sells heavy equipment. Exco and Holt had a long-standing relationship. Holt leased and/or sold various pieces of equipment to Exco on an open account (i.e. credit) basis. DeVillers testified that she was involved in setting up the original account with Holt, and that invoices were due to be paid within 30 days. Roach testified that, throughout the duration of the business relationship between Exco and Holt, dating back to 1985, Exco had never paid the invoices within 30 days. In fact, Roach testified that he routinely negotiated payment with the principals at Holt and that the bills were usually paid within 45 days. Roach also testified that both before 1998 and after 1998, Holt occasionally required Exco to pay for items on a C.O.D. (cash on delivery) basis. Tara Preston, the finance manager for Holt, also testified that Exco had never paid the invoices within 30 days. Preston testified further regarding one C.O.D. purchase in December 1999, which was for novelty items, such as ball caps.
 {¶ 5} ln 1998, Exco was involved in work on a project at Polaris and needed to rent two large scrapers. The cost of rental on the scrapers would have been approximately $33,000 per month. DeVillers testified that Roach brought her a guaranty prepared by Holt and indicated to her that she would need to sign it before Holt would permit them to rent the two scrapers. DeVillers testified that she did not read the guaranty and that she did not ask any questions; however, she made the assumption that the guaranty was requested solely for the cost of renting the two scrapers. Roach testified that DeVillers would have been generally aware of how much money Exco owed overall; however, she would not have been aware of how much money Exco specifically owed Holt. At the time that the guaranty was signed, Roach testified that Exco owed Holt approximately $100,000. Furthermore, at the time that the guaranty was signed, DeVillers had been required to notify Holt in writing of her net worth, which was approximately 2.1 million in 1997.
 {¶ 6} The guaranty signed by DeVillers provided, in pertinent part, as follows:
 OPEN ACCOUNT CREDIT GUARANTY
Holt company of Ohio, Inc. ("Holt") has extended and is now extending credit to Exco Company ("Customer") for inventory, goods, parts, equipment rentals and other merchandise sold and delivered to Customer on credit. Customer desires to purchase other merchandise from time to time from Holt, and desires to have credit for such purchases in accordance with terms extended by Holt, subject to modification from time to time. Holt is willing to continue to sell to Customer provided payment is assured by the undersigned as guarantor. Accordingly, the undersigned agrees, for and in consideration of such credit as has been or may be extended by Holt to Customer in the future, to guaranty payment to Holt of all sums which may become due and payable to Holt, whether for goods sold and delivered to Customer, for equipment rental charges, and fees and costs of collection if Customer defaults on its payment obligations to Holt. This Guaranty is to be a continuous guaranty and shall be in full force and effect until written notice of its termination is given to Holt. Written notice of termination of this Guaranty shall also be deemed terminate [sic] any and all then existing credit arrangements between Customer and Holt effective at the same time as termination of this Guaranty.
 {¶ 7} In March 2001, Exco filed for bankruptcy. DeVillers testified that, at the time the bankruptcy was filed, it appeared to her that Exco had enough assets to pay all of its debts, including the debt owed to Holt. DeVillers also testified that it was around this time she found the guaranty signed in 1998 in a file. On April 25, 2001, DeVillers terminated the guaranty with the following letter:
To Whom It May Concern:
This letter will constitute notice that I hereby terminate any guaranty I may have signed in connection with the above-captioned company, effective upon receipt of this notice.
 {¶ 8} On May 31, 2001, Holt filed a cause of action against DeVillers in the Franklin County Court of Common Pleas due to the breach of the personal guaranty executed June 2, 1998. Following a trial, the trial court granted Holt's motion for directed verdict and awarded Holt judgment in the amount of $265,264.09 after making the following findings: the guaranty itself was clear and unambiguous; DeVillers could not escape liability by contending that she had failed to read the agreement prior to signing; and that permitting Exco to pay outside of the original 30-day time frame and insisting that Exco pay on a C.O.D. basis occasionally, did not constitute a material change of the underlying agreement. Holt requested prejudgment interest, the parties briefed that issue, and the trial court concluded that Holt was entitled to prejudgment interest at a rate of ten percent per annum from the date of each invoice listed on Holt's statement of account. Thereafter, DeVillers filed the instant appeal in this case.
 {¶ 9} In her first assignment of error, DeVillers asserts that the trial court erred in granting Holt's motion for directed verdict. Civ.R. 50(A)(4) provides the standard upon which a directed verdict can be granted and reads as follows:
When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 {¶ 10} A motion for directed verdict may be granted when the trial court, after construing the evidence most strongly in favor of the nonmoving party, finds that, upon any determinative issue, reasonable minds can come to but one conclusion upon the evidence submitted, and that conclusion is adverse to the nonmoving party. Strother v. Hutchinson (1981), 67 Ohio St.2d 282; Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116; McConnell v. Hunt Sports Ent. (1999),132 Ohio App.3d 657. In determining whether to grant a motion for directed verdict, the trial court does not engage in a weighing of the evidence, nor does it evaluate the credibility of witnesses. Strother, Wagner and McConnell, supra. Instead, the trial court is confronted solely with a question of law: was there sufficient material evidence introduced at trial so as to create a factual question to the jury. Id. Upon appeal to this court, our review of the trial court's ruling on a motion for directed verdict is de novo. McConnell.
 {¶ 11} In McConnell, this court set forth the law concerning the construction of contracts, as follows:
The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241 * * * paragraph one of the syllabus. The purpose of contract construction is to discover and effectuate the intent of the parties, and the intent of the parties is presumed to reside in the language they chose to use in the agreement. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313 * * *. If a contract is clear and unambiguous, there is no issue of fact to be determined, and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322 * * *; Alexander at 246 * * *. Only where the language of a contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635 * * * syllabus.
The test for determining whether a term is ambiguous is that common words in a written contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face of or overall content of the contract. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 54 * * * citing Alexander at paragraph two of the syllabus. A writing will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361
* * *[.]
 {¶ 12} DeVillers concedes that the guaranty which she signed falls within the category of a "continuing guaranty," which this court has defined as follows:
* * * [A] guaranty assuring payment for all goods purchased was a continuing guaranty for an open account if it failed to limit its duration and the parties to the guaranty contemplated a succession of credits in a future course of dealings for an indefinite time. * * * G. F. Business Equip., Inc. v. Liston (1982), 7 Ohio App.3d 223, citing Srutek v. Hart Co. (1923), 1 Ohio Law Abs. 374.
 {¶ 13} However, DeVillers contends that she was not liable to Holt for the entire amount that Exco owes. In G.F. Business Equip., this court stated as follows:
* * * In Morgan v. Boyer, supra, at 326, the court said:
"* * * A guarantor, like a surety, is bound only by the precise words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and of the object intended to be accomplished. The rule that a guarantor is held only by the express words of his promise does not entitle him to demand an unfair and strained interpretation of those words, in order that he may be released from the obligation which he has assumed."
Id. at 224.
 {¶ 14} The guaranty executed by DeVillers provides that she would be responsible as follows:
* * * Accordingly, the undersigned [DeVillers] agrees, for and in consideration of such credit as has been or may be extended by Holt to Customer [Exco] in the future, to guaranty payment to Holt of all sums which may become due and payable to Holt, whether for goods sold and delivered to Customer, for equipment rental charges, and fees and costs of collection if Customer defaults on its payment obligations to Holt. * * *
 {¶ 15} At trial, Roach testified that, based upon the agreement of the parties and in reliance upon the guaranty, Holt supplied rental equipment and other related services to Exco. Roach further testified that he was authorized by DeVillers to incur the entire debt with Holt. Furthermore, DeVillers herself testified that, had she read the guaranty before she signed it, she would have realized the implications.
 {¶ 16} As a matter of law, this court concurs with the trial court that the guaranty is unambiguous. By its terms, DeVillers was made personally liable for any debt of Exco owed to Holt. Furthermore, DeVillers testified that she did not contest the amounts on any of the invoices and, as such, the trial court determined that she was liable for Exco's debt to Holt in the amount of $265,264.09.
 {¶ 17} DeVillers argued at trial that she herself never agreed that she would be liable for all of Exco's debts to Holt. Instead, DeVillers testified that she believed the guaranty only extended to the rental of the two large scrapers, and she assumed that the guaranty would have been cancelled or terminated once those scrapers were paid for and returned. However, as stated previously, DeVillers concedes that, had she read the guaranty, she would have realized that the terms of the guaranty were altogether different.
 {¶ 18} In Hadden Co., L.P.A. v. Del Spina (Aug. 26, 2003), Franklin App. No. 03AP-37, this court recently stated as follows:
* * * One of the most celebrated tenets of the law of contracts is that a document should be read before being signed, and the corollary to this rule is that a party to the contract is presumed to have read what he signed and cannot defeat the contract by claiming he did not read it. See, e.g., McAdams v. McAdams (1909), 80 Ohio St. 232, 241. * * *
Id. at ¶ 15.
 {¶ 19} The fact that DeVillers did not read the contract does not relieve her of liability under the contract. Here, the terms of the contract were clear and unambiguous, and DeVillers cannot escape liability based upon her failure to read the guaranty.
 {¶ 20} DeVillers also contends that she should not be liable for this debt because Holt materially changed the agreement between the parties. Specifically, DeVillers argues that, by permitting Holt to make payments outside of the 30-day time period originally established between the parties, Exco made a material change in the agreement which should absolve DeVillers from liability. Furthermore, DeVillers argues that, by requiring Exco to pay on a C.O.D. basis, Holt materially changed the agreement between the parties, and she should be absolved of liability.
 {¶ 21} This court finds that, as a matter of law, the trial court correctly found that DeVillers did not present substantial evidence showing that Holt materially changed the underlying credit agreement provided in the guaranty sufficiently to permit a reasonable person to conclude that the personal guaranty had been discharged. In fact, the evidence showed that, as the CEO of Exco, DeVillers had not made it a point to be informed about the financial condition of her company. Roach testified that, both before the guaranty was signed in 1998 and after, Exco routinely paid their invoices with Holt beyond the 30-day period. Tara Preston, the finance manager for Holt agreed. This was common practice and was not a material change in the contract period. Furthermore, the record shows that Holt required that Exco pay on a C.O.D. basis both before and after the guaranty was signed. And, specifically, after the guaranty was signed, the only purchases which were made in cash were for personal items, a baseball hat and a wrench. Again, this was not a material change in the agreement; instead, it was a fact which was known by those people who were familiar with the financial arrangements between Exco and Holt.
 {¶ 22} Upon review, this court finds that, as a matter of law, the trial court did not err in granting a directed verdict in favor of Holt. As such, DeVillers' first assignment of error is not well-taken and is overruled.
 {¶ 23} In her second and third assignments of error, DeVillers argues the trial court erred in adopting and signing the proposed judgment entry prepared by Holt and in granting prejudgment interest to Holt. For the reasons that follow and to the extent indicated, those assignments of error are sustained.
 {¶ 24} R.C. 1343.03(C) provides as follows:
Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortuous conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
 {¶ 25} In Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus, the Supreme Court of Ohio set forth the test for evaluating whether a party has made a good faith effort to settle under R.C. 1343.03(C):
A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
 {¶ 26} In Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, the Supreme Court of Ohio, in evaluating the components of R.C. 1343.03(C), set forth the obligations of the party seeking to invoke the statute and the duties of the trial court when considering a party's request for prejudgment interest as follows:
* * * First, a party seeking interest must petition the court. The decision is one for the court — not any longer a jury. The motion must be filed after judgment and in no event later than fourteen days after entry of judgment. Cotterman v. Cleveland Elec. Illum. Co. (1987),34 Ohio St.3d 48 * * * paragraph one of the syllabus. Second, the trial court must hold a hearing on the motion. Third, to award prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle and, fourth, the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. R.C. 1343.03(C).
 {¶ 27} The burden of proof is on the party seeking prejudgment interest to present objective evidence of a written, or something equally persuasive, offer to settle which was reasonable considering such factors as the type of case, the injuries involved, the applicable defenses available, and the nature, scope and frequency of efforts to settle. Id. at 659. However, the party in seeking the award of prejudgment interest does not need to demonstrate bad faith on the part of the other party. Id. Furthermore, the decision regarding whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Id. at 658.
 {¶ 28} In the present case, Holt presented, as evidence, a summary of the statement of account for monies due and owed to Holt from Exco in Exhibit No. 33. DeVillers did not contest the amount of the invoices nor their validity in any manner. As such, the amount of monies due and owed Holt by Exco and pursuant to the guaranty signed by DeVillers was easily ascertainable. However, the evidence established that Exco did not pay those invoices on the day the invoices were dated. Nor did Exco pay those invoices, as a general rule, within 30 days. Instead, the evidence established two things. Roach always negotiated the payments with representatives from Holt and, on average, the invoices were paid within 45 days. Admittedly, ascertaining the proper dates from which prejudgment interest might be payable would be challenging. Furthermore, as payments are made, they should be applied to the oldest debts first. As such, this court finds that it was an abuse of discretion for the trial court to award prejudgment interest in the amount of ten percent from the date of the invoices where none of the evidence established that the money was due and owing on the date of the invoices.
 {¶ 29} Furthermore, Holt did not present any evidence on the issue of settlement. As stated previously, in Kalain, the court placed the burden of proof on the party seeking prejudgment interest to present objective evidence of an offer to settle which was reasonable considering certain factors. Although the trial court did have the parties present briefs on the matter, those briefs were never properly made a part of the record and are not currently before this court on appeal. As such, this court has no evidence before it from which this court can determine whether Holt met its burden of proof and, consequently, whether or not the trial court correctly awarded prejudgment interest. As such, DeVillers' second and third assignments of error are well-taken and sustained, and this matter must be remanded to the trial court so that the issue of prejudment interest can be properly determined.
 {¶ 30} Based on the foregoing, DeVillers' first assignment of error is overruled; however, the second and third assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas granting a directed verdict in favor of Holt regarding the breach of the guaranty is affirmed; however, the trial court's decision with regard to prejudgment interest is reversed, and this cause is specifically remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
BROWN and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.