In re Edward J. ZATTA and Jennifer A. Zatta, Debtors.

Edward J. Zatta and Jennifer A. Zatta, Plaintiffs,

v.

Magna National Realty, LLC, Defendant.

Bankruptcy No. 03–23320 BM.
Adversary No. 03–03117BM.

United States Bankruptcy Court, W.D. Pennsylvania.

June 2, 2004.

Clayton S. Morrow, Morrow & Morrow, PC, Pittsburgh, PA, for Plaintiffs.

Todd T. Zwiki, Pittsburgh, PA, for Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtors Edward and Jennifer Zatta and defendant Magna National Realty have brought motions for summary judgment in this adversary action.

Debtors maintain that they are entitled to a summary judgment because the maximum outstanding indebtedness secured by a mortgage against their personal residence has been satisfied from sales of other properties securing payment of the same debt through other mortgages.

Defendant Magna maintains that it is entitled to a summary judgment because the maximum amount of the indebtedness secured by debtors' mortgage has not been paid.

Both motions for summary judgment will be denied for reasons stated below.

### — FACTS —

Debtors Edward and Jennifer Zatta are husband and wife. They own their personal residence as tenants by the entirety.

Debtor Edward Zatta and Thomas Meinert were principals of Maxi Ideas, Inc., which operated numerous car washes and gas stations, three of which were located in Trotwood, Bucyrus and Crestline, Ohio, respectively.

Maxi Ideas delivered a promissory note to Charter One Bank in the principal amount of $855,000.00 on May 20, 1999. Edward Zatta and Thomas Meinert executed the note on behalf of Maxi Ideas as officers of the corporation. The maturity date of the note was June 1, 2009.

Concurrently therewith, debtor Edward Zatta executed a guaranty wherein he promised to pay the promissory note personally in the event Maxi Ideas did not.

A series of mortgages also was executed that same day to secure payment of the indebtedness arising from the promissory note.

Mortgages against the three commercial properties located in Trotwood, Bucyrus, and Crestline were executed and delivered to Charter One Bank at that time. Each mortgage was executed on behalf of Maxi Ideas by debtor Edward Zatta and Thomas Meinert as officers of Maxi Ideas. The mortgages were duly recorded.

In addition, debtors Edward and Jennifer Zatta granted a mortgage against their personal residence as further security for

the obligation.[1]

With the exception of the description of the specific mortgaged property, each of the mortgage instruments was identical and contained the following provision:

> The word "indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this mortgage. **The maximum amount of such indebtedness secured by this Mortgage shall not exceed at any one time $855,000.00**

On July 7, 2001, Charter One Bank assigned to Magna National Realty all of its interest in the above promissory note, the personal guaranty of debtor Edward Zatta, the mortgages, and any other documents relating to the above transaction.

When Maxi Ideas defaulted on its obligations under the promissory note, Magna National Realty commenced litigation against Maxi Ideas and debtor as guarantor. The litigation included foreclosure proceedings against the commercial properties in Trotwood, Bucyrus, and Crestline, Ohio.

On July 3, 2002, the Court of Common Pleas of Montgomery County, Ohio, entered a consent order which provided that the Trotwood property would be sold at a sheriff's sale. It was stipulated that the outstanding amount owed to Magna National Realty at that time was $990,998.00 plus interest accruing at the rate of 13.9% *per annum* from December 28, 2001. Subsequent to the sheriff's sale of the property, the sum of $465,490.19 was disbursed to Magna National Realty and was applied to the debt owed to it.

Also on July 3, 2002, the Court of Common Pleas of Crawford County, Ohio, entered a consent order which provided that the Bucyrus and Crestline properties would be sold at a sheriff's sale. It was stipulated that the outstanding amount owed to Magna National Realty at that time was $990,998.00 plus interest accruing at the rate of 13.9% *per annum* from December 28, 2001. Subsequent to a sheriff's sale of the properties, the sum of $508,935.89 was disbursed to Magna National Realty and was applied to the debt owed to it.[2]

Magna National Realty took possession of the three commercial properties and operated them during the pendency of the above foreclosure actions. Magna National Realty presented uncontroverted evidence showing that it incurred a net operating loss in the amount of $56,782.50 while operating them.

On March 19, 2003, apparently before Magna National Realty foreclosed on debtors' residence, debtors filed a voluntary joint chapter 7 petition. Their schedules listed assets with a total declared value in the amount of $447,121.85 and liabilities totaling $8,071,023.64. Included among the assets was their personal residence. Magna National Realty was identified as having a third-position mortgage lien against the residence in the amount of

---

1. Debtors aver in support of their summary judgment motion that Thomas Meinert also executed a guaranty and granted a mortgage against his personal residence to secure repayment of the indebtedness. Because neither of these instruments is evidenced in the record as it presently exists, they will not be taken into account in deciding the summary motions now before us.

2. Debtors aver that the personal residence of Thomas Meinert also was sold and that the proceeds of the sale were applied to the debt owed to Magna. Because nothing in the present record supports this assertion, it will play no role in deciding the summary judgment motions now before the court.

$855,000.00, the amount of the guaranty debtor Edward Zatta had executed.

On October 23, 2003, debtors filed a complaint against Magna National Realty at Adversary No. 03–3117BM "to Determine Secured Status and/or Value of Secured Lien".

Jurisdiction was based on § 522(f) and (h) of the Bankruptcy Code.[3] Debtors assert that the mortgage in question was a blanket mortgage which applied to five other properties, all of which previously had been sold. According to debtors, Magna National Realty had already received an amount from those sales that was sufficient to pay off the indebtedness in full or in substantial part. In the *ad damnum* clause of the complaint, debtors seek an order determining the secured portion of Magna National Financial's claim to be zero.

On March 12, 2004, debtors brought a motion for a summary judgment and submitted a brief in support thereof. Magna National Realty countered that same day with its own motion for summary judgment and submitted a brief in support of its motion. The motions, which were argued on April 14, 2004, are now ready for decision.

— DISCUSSION —

— I —

Summary judgment is appropriate when:

... the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Federal Rule of Civil Procedure 56(c).

A fact is "material" for purposes of Rule 56(c) if, under applicable substantive law, it is "outcome determinative". *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). An issue is "genuine" for such purposes if, based on the evidence presented, a reasonable jury could find in favor of the non-moving party on that issue. *Id.*

The standard for summary judgment "mirrors" that for a directed verdict under Federal Rule of Civil Procedure 50(a). A verdict shall be directed if, under applicable substantive law, "there can be but one reasonable conclusion as to the verdict". *Id.,* 477 U.S. at 250, 106 S.Ct. at 2510.

Regardless of which party would have the burden of persuasion at trial, the moving party has the burden of demonstrating that there are no genuine issues of material fact. If, however, the non-moving party would have the burden of persuasion at trial, the moving party may satisfy its burden by demonstrating that the evidence of record would not suffice for the non-moving party to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327–28, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Once the moving party shows that there are no genuine issues of material fact, the non-moving party must come forward with

---

**3.** We note parenthetically that §§ 522(f) and (h) do **not** provide a jurisdictional basis here. What debtors seek to accomplish in this adversary action does not "arise under" these provisions. Section 522(f) applies to avoidance of judicial liens. At issue in this instance is a consensual mortgage, not a judicial lien. In addition, debtor do not seek to avoid a **transfer** of their property which a trustee could have avoided pursuant to specific Code sections but did not attempt to avoid, as § 522(h) requires. Because Magna National Realty has not raised this matter, we will not take it into consideration in deciding the motion snow before us.

"specific facts showing that there is a genuine issue for trial". *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

We must view the facts in a light most favorable to the non-moving party when considering a motion for a summary judgment. *Beers–Capitol v. Whetzel,* 256 F.3d 120, 130 n. 6 (3d Cir.2001). The non-moving party may not rely on entirely conclusory allegations if it is to successfully avoid a summary judgment. It instead must point to facts demonstrating that there is a genuine issue with respect to a material fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

— II —

■ Because there is a genuine issue of material fact which cannot be resolved on the basis of the present record in this case, the counter-motions for summary judgment must be denied. Resolution of this adversary action might well depend on which party prevails at trial concerning the issue.

Except for the description of the specific property to which each mortgage applies, all of the mortgages are identical. Moreover, each contained a sentence which undoubtedly was added for some unknown reason to the boilerplate language contained therein. It provided that the "maximum amount of indebtedness secured by this Mortgage shall not exceed at any time $855,000.00". This sentence appeared in bold-face print and in a larger font than the remainder of the paragraph in which it was embedded.

It is not disputed that Magna National Realty received a total of $974,426.08 from the sales of the Trotwood, Bucyrus, and Crestline commercial properties. Magna National Realty realized the sum of $465,490.19 from the sale of the Trotwood property and the sum of $508,935.89 from the sales of the Bucyrus and Crestline properties ($465,490.19 + $508,935.89 = $974,426.08).

This total amount—i.e., $974,426.08—exceeds by $119,426.08 the maximum indebtedness which is secured by the mortgage lien against debtors' residence ($974,426.08—$855,000.00 = $119,426.08). From this debtor would have us infer that the mortgage lien against their residence has been satisfied in its entirety.

Debtors' argument relies on the truth of the proposition that the above-quoted sentence in their mortgage should be construed as providing that if and when a total of $855,000.00 has been recovered from properties subject to the other mortgages securing the same indebtedness, the amount of security provided by their mortgage is zero.

In its response to debtors' motion for a summary judgment, Magna National Realty contends that debtors have misconstrued the above-quoted sentence in their mortgage. According to Magna National Financial, it should be construed as providing that Magna National Financial may not apply an amount greater than $855,000.00 realized from any sale of debtors' residence towards the outstanding indebtedness due under the promissory note. If, for example, Magna National Financial were to realize $1,000,000.00 from a sale of debtors' residence, only $8555,000.00 of this amount could be utilized to reduce the indebtedness. The amount realized from a sale of debtors' residence that may be applied to the outstanding indebtedness, in other words, is capped at $855,000.00.

Magna National Financial's own motion for summary judgment is based on this same construal of the above sentence in debtors' mortgage. Magna National Financial maintains that any indebtedness

remaining after the sum of $974,426.08 has been applied is subject, up to a maximum of $855,00.00, to its mortgage lien against debtors' residence.

According to Magna National Financial, indebtedness in the amount of $128,386.32 plus interest at the rate of 13.9% per annum from October 25, 2002, remains due after the sum of $974,426.08 has been applied. This amount obviously is considerably less than the maximum amount of indebtedness secured by its mortgage lien against debtors' residence. From this Magna National Financial would have us conclude that it is entitled to a summary judgment in its favor.

Debtors' mortgage provided that it was to be governed by and construed in accordance with Ohio law. We see no reason to do otherwise in this instance.

▪ Mortgages are voluntary security agreements and are incidental or collateral to a primary obligation. As such, they are subject to the same rules of construction and analysis as apply to contracts in general. *First Federal Savings & Loan Association of Toledo v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 143, 463 N.E.2d 636, 646 (1983).

▪ When confronted with the task of construing a contract, a court must strive to give effect to the intention of the parties to the contract. *Hamilton Insurance Services, Inc. v. Nationwide Insurance Companies,* 86 Ohio St.3d 270, 273, 714 N.E.2d 898, 900 (1999). It must look to the plain and ordinary meaning of the language employed, unless another meaning is clearly apparent from the contents of the agreement. *Westfield Insurance Company v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256, 1261 (2003).

▪ A contract is unambiguous if it can be given a definite legal meaning. *Id.* If it is unambiguous, a court may not look

beyond the language employed to ascertain its meaning. *Kelly v. Medical Life Insurance Co.,* 31 Ohio St.3d 130, 132, 509 N.E.2d 411, 413 (1987). Extrinsic evidence, in other words, may not be taken into consideration.

▪ A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *State ex rel. Petro v. R.J. Reynolds Tobacco Co.,* 152 Ohio App.3d 345, 352, 787 N.E.2d 717, 724 (2003). If a contract is ambiguous, extrinsic evidence may be considered to resolve the ambiguity. *Shifrin v. Forest City Enterprises, Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501 (1992).

Having read the above sentence in debtors' mortgage agreement numerous times, we conclude that it is amenable to more than one reasonable construal and therefore is ambiguous.

Considering just the language of this sentence in the context of the mortgage instrument as a whole, it could be fairly understood as providing, as debtors' maintain, that any reduction in the amount of outstanding indebtedness arising under the promissory note results in a dollar-for-dollar reduction in the amount of the security provided by debtors' mortgage. The import of this interpretation is indicated by the following hypothetical: if, as is the case here, a total of $855,000.00 or more is recovered from sales of other collateral providing security for the same promissory note, the amount of security provided by debtors' mortgage is reduced to zero—i.e., is satisfied.

This sentence alternatively could be fairly understood as providing, as Magna National Financial maintains, that it may not apply more than $855,000.00 that might be recovered from a sale of debtors' residence towards the outstanding indebtedness due under the promissory note. In other

words, up to $855,000.00 that might be recovered from a sale of the collateral provided by debtors as security may be applied towards the outstanding indebtedness arising under the note at the time of a sale. The import of this construal is illustrated by the following hypothetical: if a sale of debtors' residence were to yield $1,000,000.00, for example, the amount that could be applied to the outstanding indebtedness arising under the promissory note is capped at $855,000.00.

Given the present state of the record, we are not in apposition to determine which of these construals to adopt in this instance. Extrinsic evidence as to the intention of the parties in inserting this provision will be required to inform our decision in this regard. This can be accomplisher only after a trial has taken place and the parties have had an opportunity to present evidence pertaining to this disputed material issue.

An appropriate order shall issue.

### ORDER OF COURT

AND NOW at Pittsburgh this **2nd** day of **June**, 2004, for reasons stated in this memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that the cross-motions for summary judgment by debtors Edward J. and Jennifer A. Zatta and by Magna National Realty National Realty, LLC, be and hereby are **DENIED.**

It is **SO ORDERED.**