OPINION *Page 2 
{¶ 1} Defendants-appellants Scott Wayland, Providence Acquisitions, LLC, and Eagles Nest Ranch Academy appeal the July 26, 2006 Judgment Entry of the Fairfield County Court of Common Pleas entering judgment in favor of Plaintiffs-appellees David Horning, The Horning Group and The Best Company.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In August of 2001, Appellant Scott Wayland contacted Appellee David Horning, a business broker, to assist him in searching for a business to purchase. For each business opportunity proffered by Horning to Wayland, Horning required Wayland sign a Non-Exclusive Buyer's Side Fee Agreement, a confidentiality agreement, a real estate commission agreement and an agency disclosure sheet.
 {¶ 3} In March, 2002, Horning contacted Wayland with regard to a private school for sale. The parties executed a Non-Exclusive Buyer's Side Fee Agreement (hereinafter "Fee Agreement") on March 30, 2002, identifying the "Business Opportunity" as a "K-12 Christian Academy." The Agreement included two separate search criteria options: one, a "General Search," and two, a "Targeted Search." The parties selected the option indicating the "Business Opportunity" shall be a targeted search, covering only a specific business opportunity, generally described as "K-12 Christian Academy."
 {¶ 4} The Fee Agreement set forth the schedule for a consulting fee to be paid to Horning if a closing occurred on any "Acquisition Transaction", and stated each "closing is subject to a minimum consulting fee of fifteen thousand dollars ($15,000). Specifically, the agreement stated Horning would receive a commission if a closing *Page 3 
occurred with respect to a specific Business Opportunity generally described as a "K-12 Christian Academy," on any "Acquisition Transaction".
 {¶ 5} The Agreement defined the terms as:
 {¶ 6} "Acquisition Transaction: any form of business ownership change or transfer including, but not limited to, a sale of assets or liabilities, a sale or trade of stock, an exchange of real or personal property, a loan or other debt transfer, a merger, an acquisition, a capital or financial investment, a divestiture, a joint venture or any other type of transaction involving any part of the Company or business of the Company. The hiring of a prospective Buyer by Seller shall be construed as an Acquisition Transaction. Any form of Acquisition Transaction shall result in the requirement of Seller and/or Buyer to pay Consultant the Consulting Fee."
 {¶ 7} * * *
 {¶ 8} "Company (aka Business Opportunity): Any business entity (propietorship, company, partnership, or any form of corporation), business concept, idea, patent, franchise opportunity or other investment opportunity (in whole or in part) that has existing or prospective sales and is purported by Seller to have value."
 {¶ 9} The real estate contract executed by the parties provided Best Corporate Real Estate would receive a three percent commission on any real estate acquired by Appellants in connection with any business opportunity obtained through the efforts of Horning.
 {¶ 10} On April 16, 2002, Horning introduced Wayland to David McIlrath, one of four board members of Liberty Christian Academy. Liberty Christian Academy is a nonprofit entity comprised of three privately-owned educational facilities, and at the time *Page 4 
served as the holding company for real estate underlying Eagles Nest Riding Stables and served as landlord to Eagles Nest. Liberty Christian Fellowship is a real estate holding company for Liberty Christian Schools and Eagles Nest Ranch and Academy.
 {¶ 11} A few months later, McIlrath contacted Wayland with regard to Eagles Nest Ranch and Academy, which provides a behavioral intervention for "at risk" students enrolled in public schools throughout central Ohio. McIlrath discussed with Wayland becoming the President of Eagles Nest.
 {¶ 12} On October 17, 2002, Wayland and McIlrath entered into a business transaction whereby control of the Board of Eagles Nest would pass to Wayland upon the sale and lease back of the property by Wayland. Wayland subsequently formed Providence Acquisitions, LLC, a holding company, which obtained a loan to purchase the property on which Eagles Nest was located and leased the land back to Eagles Nest and Liberty Christian Fellowship.
 {¶ 13} Horning sought commissions due under the parties' agreements, and appellants refused to pay the same.
 {¶ 14} Appellees David Horning, The Horning Group and The Best Company filed a complaint against Appellants Scott Wayland, Providence Acquisitions, LLC, and Eagles Nest Ranch Academy alleging breach of the Exclusive Right to Represent Buyer Contract, breach of the Non-Exclusive Buyer Side Fee Contract, unjust enrichment, bad faith, procuring cause and a claim for amount due on account.
 {¶ 15} The matter proceeded to a bench trial. Via Judgment Entry of July 26, 2006, the trial court entered judgment in favor of Appellees on the claims for breach of *Page 5 
the Fee Agreement, and breach of the real estate agreement. The trial court entered judgment in favor of Appellees in the amount of $105,000.00, plus interest.
 {¶ 16} Appellants now appeal, assigning as error:
 {¶ 17} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT DEFENDANT-APPELLANT BREACHED THE NON EXCLUSIVE BUYER SIDE FEE AGREEMENT AND THAT PLAINTIFF-APPELLEE WAS ENTITLED TO BE PAID A CONSULTING FEE.
 {¶ 18} "II. THE TRIAL COURT ERRED WHEN IT FOUND, BEYOND A PREPONDERANCE OF THE EVIDENCE, THAT DEFENDANT PROVIDENCE ACQUISITION'S PURCHASE OF THE REAL ESTATE, AND APPURTENANCES THERETO, UPON WHICH EAGLES NEST OPERATED IN CONJUNCTION WITH THE TRANSFER OF CONTROL TO EAGLES NEST TO APPELLANT WAS A `BUSINESS OPPORTUNITY' AS DEFINED IN THE NON-EXCLUSIVE BUYERS SIDE FEE AGREEMENT, THEREBY ENTITLING PLAINTIFF BEST A SALES COMMISSION PURSUANT TO THE REAL ESTATE CONTRACT."
 I {¶ 19} In the first assignment of error, Wayland argues the trial court erred in finding he breached the Non-Exclusive Buyer Side Fee Agreement, and in finding Horning was entitled to the consulting fee contemplated by the agreement.
 {¶ 20} As set forth above, the agreement at issue in this case provides the search for a Business Opportunity shall be a "Targeted Search" as opposed to a "General Search," and "shall only cover a specific Business Opportunity "generally described below as K-12Christian Academy." *Page 6 
 {¶ 21} Generally, a trial court is required to presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Shifrin v. Forest City Ent., Inc .,64 Ohio St.3d 635, 638, 597 N.E.2d 499, 1992-Ohio-28, citing Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus; Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id., citing Kelly at 132. When the terms of a contract are unambiguous, courts will not in effect create a new contract by finding intent not expressed in the clear language employed by the parties.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 246,374 N.E.2d 146. Whether the terms of a contract are ambiguous is a question of law for the Court.
 {¶ 22} Upon review, we find the language in the Fee Agreement is inherently ambiguous, as the Agreement reflects the parties' intent to limit the search for a Business Opportunity to a Targeted Search, yet "generally" describing the Business Opportunity as a "K-12 Christian Academy." As a result of the inherent ambiguity, extrinsic evidence can be considered to determine the parties' intent. Shifrin v. Forest CityEnterprises, Inc. (1992), 64 Ohio St.3d 635.
 {¶ 23} Upon review of the evidence presented at trial, it is undisputed Horning introduced Wayland to David McIlrath and they discussed the sale of McIlrath's business, the Liberty Christian School. Appellant then maintained contact with McIlrath subsequent to the meeting. At trial, Appellee testified the "Targeted Search" *Page 7 
contemplated by the Fee Agreement was intended to cover the businesses owned and controlled by McIlrath. As set forth above Liberty Christian Academy served as the holding company for the real estate underlying Eagles Nest and as landlord for Eagles Nest.
 {¶ 24} The Fee Agreement at issue states, in pertinent part:
 {¶ 25} "2. If a Closing occurs on any Acquisition Transaction withany Seller and/or Company for any Business Opportunity introduced toClient by Consultant as part of the search defined above, Client shall pay Consultant a Consulting Fee based on a percentage of the Transaction Value. (Emphasis added.)
 {¶ 26} It is undisputed Appellee introduced Appellant to McIlrath as part of the business opportunity generally described as "K-12 Christian Academy".
 {¶ 27} The evidence demonstrates Eagles Nest Academy is a school-related entity offering academic programs through Christian textbooks for "at-risk" school age children. The evidence further demonstrates Eagles Nest is known as an academy operated by the Liberty Christian Fellowship, where students from various school districts are sent for, among other things, tutoring. The Eagles Nest students earn grades and academic credit. Further evidence sufficiently established Eagles Nest is operated based on Christian principles and teachings.
 {¶ 28} We additionally note, there was some evidence Appellant was paid a salary for his services as President and CEO of Eagle's Nest in the amount of $240,000 per year, although Appellant denied having received any salary.
 {¶ 29} Providence Acquisitions, LLC. purchased the land upon which Eagles Nest Ranch and Academy operated, in conjunction with Appellant's appointment as *Page 8 
President and CEO of Eagles Nest. It is undisputed Appellant is the sole member of Providence Acquisitions, LLC.
 {¶ 30} Accordingly, we find Wayland's purchase of the real estate, and appurtenances thereto on which Eagles Nest operated, as sole member of Providence, from Liberty Christian Fellowship, and the transfer of control of Eagle's Nest to Appellant, as President of the Board of Trustees, constituted an Acquisition Transaction on a Business Opportunity as contemplated by the Fee Agreement. The definition of Business Opportunity in the Fee Agreement is very broad and not limited to the purchase of a business.
 {¶ 31} Based upon the above, the trial court did not err in determining Appellant breached the Fee Agreement at issue.
 {¶ 32} Appellant's first assignment of error is overruled.
 II {¶ 33} In the second assignment of error, Wayland argues the trial court erred in determining he breached the real estate agreement executed with Horning and Best.
 {¶ 34} Based upon our analysis and disposition of the first assignment of error and the evidence presented at trial, the trial court did not err in determining Appellant breached the real estate agreement. Appellant, through his holding company, purchased real estate owned by Liberty Christian Fellowship upon which land Eagles Nest operated. The purchase and lease-back of the property constituted an Acquisition Transaction on a Business Opportunity as defined in the Fee Agreement, for the purpose of continuing Eagles Nest operations with Appellant as CEO and President.
 {¶ 35} Appellant's second assignment of error is overruled. *Page 9 
 {¶ 36} The July 26, 2006 Judgment Entry of the Fairfield County Court of Common Pleas is affirmed.
Hoffman, J., Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the July 26, 2006 Judgment Entry of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1