[Cite as *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 2017-Ohio-2983.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104559**

# BEVERAGE HOLDINGS, L.L.C.

PLAINTIFF-APPELLEE

vs.

# 5701 LOMBARDO, L.L.C. D.B.A. VALENTINO-VAL L.L.C.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-846163

**BEFORE:** Kilbane, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 25, 2017

**ATTORNEYS FOR APPELLANT**

J. Reid Yoder
Benjamin R. Sorber
Dicaudo Pitchford and Yoder
209 South Main Street, Suite 300
Akron, Ohio 44308


**ATTORNEYS FOR APPELLEE**

James D. Romer
Joseph T. Burke
Ashley E. Loyke
Polito, Rodstrom & Burke, L.L.P.
21300 Lorain Road
Fairview Park, Ohio 44126

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, 5701 Lombardo, L.L.C., d.b.a . Valentino-Val, L.L.C. ("Lombardo"), appeals from the trial court's decision granting partial summary judgment in favor of plaintiff-appellee, Beverage Holdings, L.L.C. ("Beverage"). For the reasons set forth below, we affirm.

**{¶2}** On April 29, 2011, Lombardo and Beverage entered into an agreement in which Beverage purchased from Lombardo a preschool/daycare business known as the Goddard School and the property upon which it was located for $1,726,000. Lombardo was not able to sell the building at the time of the sale because of outstanding debt it had on its mortgage. As a result, Lombardo and Beverage, through related entities, entered into a sale of the business itself and a lease agreement for Beverage, through its related company, PRB Development, L.L.C. The lease agreement provided that Beverage would lease the property and continue to run the Goddard School until Lombardo was able to sell the real property. The real property purchase agreement permitted closing of the sale of the real property to occur sometime in the future, with an anticipated closing being several years from the date the agreement was signed. The agreement provided Beverage with the right to notify Lombardo when it wanted to close the transaction.

**{¶3}** In the interim, the parties agreed that Beverage would make monthly rental payments to Lombardo in the amount of $12,500 until the parties closed on the transaction. Beverage also paid the real property taxes, assessments, property and fire insurance, all utilities, all use and occupancy taxes, and all maintenance and repairs.

Under section 3 of the agreement, the calculation of the purchase price was subject to several adjustments. Section 3 provides in pertinent part:

> 3. Adjustments to Purchase Price. At closing, the purchase price shall be adjusted by providing [Beverage] a credit for the following:
>
> a) The Purchase Price shall be decreased by:
>
> * * *
>
> ii) Rents received by Seller from the tenant of the Premises, prorated to date of closing.

{¶4} On March 12, 2015, Beverage sent Lombardo a notice of its intent to purchase the property. On May 19, 2015, Lombardo responded by notifying Beverage that it was revoking the agreement and disputed Beverage's interpretation of the section 3(a)(ii), which adjusted the final purchase price for the rents paid by Beverage. Beverage then filed a complaint against Lombardo for declaratory judgment, damages, injunction, specific performance, and other legal and equitable relief. Beverage alleges that Lombardo breached the agreement when it unilaterally revoked and repudiated on the purchase agreement when Beverage exercised its "notice of intent to close transaction." Beverage sought to purchase the premises for $1,202,110.09, which included adjustments for principal payments, prepayment fee, $462,500 in rent credits, and the security deposit. Lombardo refused to accept the final purchase price, alleging that Beverage failed to close within 180 days of signing the purchase agreement. Lombardo further alleged that the agreement intended to provide credits only for rents received for the period following

the date of closing, prorated to the date of closing.  Relevant to this appeal, Beverage

sought a declaratory judgment

> a) As to the calculation of the final purchase price pursuant to the terms and conditions stated in the Purchase Agreement; and
>
> b) The interpretation of how much in rent is subject to the reduction noted in Section 3 of the Purchase Agreement where it states that the purchase price will be reduced by:   "Rents received by Seller from the tenant of the Premises, prorated to date of Closing."

{¶5}   Both parties filed motions for summary judgment.  After reviewing both

motions, the trial court denied Lombardo's motion for summary judgment and granted

Beverage's motion in part.   In a thoughtful opinion, the court stated:

> [Beverage] seeks a declaratory judgment interpreting Section 3(a)(ii) of the Agreement.   Section 3(a)(ii) states the purchase price for the property shall be adjusted by providing [Beverage] a credit for "Rents received by [Lombardo] from [Beverage] of the Premises, prorated to date of closing." Both parties agree there is a credit for rents received.   [Beverage] believes the credit applies to all rents received from the date of the Agreement. [Lombardo] believes the credit applies only to a prorated amount of the last month's rent according to the date of closing.
>
> * * *
>
> When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether or not ambiguity exists.   If the contract terms are clear and precise, the contract is not ambiguous.  *See Beasly v. Monoko, Inc.*, 195 Ohio App.3d 93, 2011-Ohio-3995, 958 N.E.2d 1003 (10th Dist.).
>
> The Court finds the language at issue to be unambiguous, and supportive of [Beverage's] interpretation applying the credit to all rents received by [Lombardo].   In contrast, the language does not support [Lombardo's] interpretation limiting the credit to a prorated amount of a single month's rent payment.   No such limit exists in the actual language used by the parties.   The Agreement clearly provides [Beverage] a credit for rents received by [Lombardo], and allows for the final month's rent credit to be

prorated according to the date of closing.

The interpretation of Section [3(a)(ii)] is appropriate for disposition through a declaratory judgment action. As there are no issues of material fact and because reasonable minds can come to but one conclusion, [Beverage] is entitled to Summary Judgment on Count I of its Complaint as it relates to the interpretation of Section 3(a)(ii) of the Agreement. The Court finds that Section 3(ii)(a) of the Agreement provides [Beverage] a credit for all rents paid from the date of the Agreement until closing.

{¶6} It is from this order Lombardo appeals, raising the following three assignments of error for review.

### Assignment of Error One

The trial erred when it interpreted the contract to provide for a credit of all rent paid and failed to give full effect to the term "prorated" in the contract.

### Assignment of Error Two

The trial court erred when it failed to consider extrinsic evidence in interpreting the contract.

### Assignment of Error Three

The trial court erred when it granted summary judgment in favor of [Beverage] as to the interpretation of the parties' contract.

{¶7} Within these assigned errors, Lombardo argues the trial court erred in interpreting the contract to provide Beverage with a credit for all rents paid from the date of the agreement until closing, instead of prorating the rent to the month of closing. Lombardo further argues the court erred when it failed to consider extrinsic evidence in interpreting the contract.

{¶8} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996);

*Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶9} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶10} The construction of a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), at paragraph one of the syllabus. "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City*

*Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph_one of the syllabus; *Aultman Hosp. Assn. v. Community 104 Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus. Contracts are to be read as a whole, giving effect to every part of the agreement, and the intent of the parties is to be determined from the contract as a whole. *London Guar. & Acc. Co. v. Empire Plow Co.*, 115 Ohio St. 684, 689, 155 N.E. 382 (1927). "Common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is intended from the face or overall contents of the instrument." (Citations omitted.) *Alexander* at 245-246.

{¶11} Only when the language of a contract is ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions. *Kelly* at 132. Extrinsic or parol evidence is "admissible to explain an ambiguity or uncertainty arising out of the terms of a written instrument." *Suburban Ford Tractor Sales, Inc. v. Orlean Co.*, 8th Dist. Cuyahoga No. 33654, 1975 Ohio App. LEXIS 6167, *8 (Apr. 3, 1975). However, "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin* at 638, citing *Alexander* at 246.

**{¶12}** In the instant case, the initial purchase price as provided in the agreement is $1,726,000.[1]   Under section 3(a)(ii), this price is to be adjusted as follows:

a) The Purchase Price shall be decreased by:

\* \* \*

ii) Rents received by Seller from the tenant of the Premises, prorated to date of closing.

**{¶13}** The plain reading of this section provides that the initial purchase price will be reduced by rents received by Lombardo from Beverage, prorated to date of closing. Lombardo contends the above phrase means that the purchase price is reduced only by the singular prorated rent paid in the month of closing.   We disagree.

**{¶14}** Relying on the four corners of the agreement and giving these terms their ordinary meaning, the agreement provides for all rent paid by Beverage to be deducted from the initial purchase price.   In fact, Lombardo's attorney solely drafted section 3 of the agreement.   It is undisputed the parties were aware that there was a significant delay of up to five years before the closing of the sale.   Lombardo's lenders conditioned permission for the lease upon the payoff by Lombardo within five years.   This is evident by the agreement providing Beverage with a credit to the purchase price for all rents paid.  If closing had occurred within the customary few weeks, then the lease would have been unnecessary.   In addition, the rent is prorated because it is prepaid.   As a result,

---

[1]The $1,726,000 purchase price was based on the total amount Lombardo owed its lenders.

Beverage would not receive a credit for rent amounts that were not yet due.  The phrase "prorated to closing" conveys this concept.

{¶15} Lombardo further argues the court erred by not considering parol evidence when interpreting the contract.  Lombardo seeks to introduce parol evidence to give full effect of the parties' intent.  Parol evidence, however, may only be admitted when the terms of the contract are ambiguous.  Having determined the terms of the agreement are unambiguous, we find the parol evidence rule inapplicable to the instant case.

{¶16} In light of the foregoing, we find the trial court properly granted partial summary judgment in Beverage's favor.

{¶17} Accordingly, the first, second, and third assignments of error are overruled.

{¶18} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MELODY J. STEWART, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

MELODY J. STEWART, J., DISSENTING:

{¶19} I agree that standing alone, the plain language of the clause stating that the purchase price of the property would be decreased by "[r]ents received by Seller from the tenant of the Premises, prorated to date of closing" seems to apply to all rents received from the tenant, not just the rent paid during the closing period. Nevertheless, we should not give words used in a contract their ordinary meaning if "manifest absurdity results." *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 34. When such a situation exists, the court should engage in fact-finding to give the contract the most sensible and reasonable interpretation. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987).

{¶20} An unreasonable and unintended result occurs if we read this contract clause in isolation from two other contract provisions: the reduction in principal credit and closing. The real estate purchase agreement states that Lombardo's financing at the time made it impractical to currently close the transaction and, in fact, that the sale might not close for "several years." In consideration of this fact, the parties agreed that Lombardo would reduce the purchase price to Beverage Holdings "by the amount of principal payments made by Seller to Seller's lender for the mortgage notes currently on the property" and that, at closing, Beverage Holdings would "receive a credit equal to the reduction in principal for the mortgage notes from the date of the execution of this agreement until the closing date." Given that the parties understood that Lombardo had

issues with its financing prior to entering into the real estate purchase agreement, it would be absurd to conclude that Lombardo intended to deduct from the purchase price both principal payments and all rents received during what could be a lengthy lease term (the parties contemplated a lease term of as much as ten years). Doing so would seem only to undermine its already precarious financial situation.

**{¶21}** The closing clause also indicates that the rent proration reduction was meant to apply only to rent paid after Beverage Holdings gave notice of intent to close. The parties anticipated a closing time between 120-180 days. Given this amount of time, it was prudent for the parties to state that any rents, which were payable in advance under the lease, be prorated to closing.

**{¶22}** Admittedly, the real estate purchase agreement is not a model of clarity. But reasonable minds could find that Beverage Holdings is attempting to take advantage of errors in drafting that go beyond the hard consequences of imprecision and lapse into absurdity. I would find that questions of fact exist as to what the parties truly intended with the rent proration clause.